ELIZABETH A. BROWN (SB# 235429)
JENNIFER SVANFELDT (SB# 233248)
CARLOS I.  MARTINEZ-GARCIA (SB# 300234)
MATTHEW W.  MORRIS (SB# 309741)
lisabrown@gbgllp.com
jensvanfeldt@gbgllp.com
carlosmartinez@gbgllp.com
mattmorris@gbgllp.com
GBG LLP
633 West 5th Street, Suite 3330
Los Angeles, CA  90071
Telephone: (213) 358-2810
Facsimile: (213) 995- 6382

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.,
an Ohio Corporation

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILIA SANTOS, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC., a Delaware Corporation; UNITED PARCEL SERVICE, INC., an Ohio Corporation; DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:18-cv-03177-EMC<br><br>**DEFENDANT UNITED PARCEL SERVICE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         May 6, 2021<br>Time:        1:30 p.m.<br>Judge:       Hon.  Edward M.  Chen<br>Courtroom:  5 |

# Table of Contents

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

        A.      Overview of UPS's Operations and Part Time Supervisor Position...................... 2

        B.      Plaintiff's Employment with UPS............................................................................ 2

        C.      UPS's Wage Statements............................................................................................ 4

        D.      Plaintiff Understood UPS's Wage Statements and Meal Premium
                Payments. .................................................................................................................. 5

        E.      Class Member Testimony Confirms that Employees Can Ascertain
                Required Information from the UPS Wage Statements. ........................................ 6

        F.      Plaintiff's Motion for Class Certification and Court Order Certifying the
                Wage Statement Subclass ........................................................................................ 8

III.    SUMMARY JUDGMENT IS PROPER AS TO THE PLAINTIFF AND THE
        CERTIFIED CLASS ON THE WAGE STATEMENT CLAIM................................ 9

        A.      Labor Code Section 226 and Wage Order 9 Require Employers to Issue
                Itemized Wage Statements Containing Certain Limited Information.................. 10

        B.      UPS's Wage Statements Contain All the Information Required by Labor
                Code Section 226(a) and Wage Order 9 ................................................................ 10

                1.      UPS Wage Statements Contain All the Elements Required by
                        Section 226(a) and Wage Order 9 ............................................................ 10

                2.      The California Meal Period Payment Inclusion Does Not Render
                        UPS Wage Statements Unlawful .............................................................. 12

        C.      Summary Judgment is Proper on UPS's Third Separate and Affirmative
                Defense Because Plaintiff Cannot Establish That She or the Class Suffered
                Injury from any Allegedly Improper Wage Statement ........................................ 16

        D.      Summary Judgment is Proper on Defendant's Tenth Separate and
                Affirmative Defense because Plaintiff Cannot Show Any Intention to
                Violate the Statute ................................................................................................. 17

        E.      Summary Judgment as to the Seventh Cause of Action on Plaintiff's
                PAGA Claim is Proper Because UPS Wage Statements Do Not Violate
                Section 226(a) ........................................................................................................ 18

        F.      Summary Judgment as to the Seventh Cause of Action is Proper Because
                UPS Wage Statements Substantially Comply with the Labor Code.................... 19

1
2
**Table of Contents**

3
**Page**

4      IV.     SUMMARY JUDGMENT IS PROPER ON PLAINTIFF'S INDIVIDUAL
               SECOND CAUSE OF ACTION FOR FAILURE TO PROVIDE REST PERIODS....... 20
5
       V.      CONCLUSION ............................................................................................................. 22
6

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Authorities

**Page(s)**

**Cases**

*Amaral v. Cintas Corporation No. 2,*
   163 Cal. App. 4th 1157 (2008) ..................................................................................... 17, 18

*Arias v. Superior Court,*
   46 Cal. 4th 969 (2009) ...................................................................................................... 19

*Benitez v. W. Milling, LLC,*
   No. 1:18-CV-01484-SKO, 2020 WL 309200 (E.D. Cal. Jan. 21, 2020) ............................. 14

*Brinker Restaurant Corp. v. Superior Court,*
   53 Cal. 4th 1004 (2012) ................................................................................................... 20

*Cal-Air Conditioning, Inc. v. Auburn Union School Dist.,*
   21 Cal. App. 4th 655 (1993) ............................................................................................. 19

*County of Tulare v. Campbell,*
   50 Cal. App. 4th 847 (1996) ............................................................................................. 19

*Downtown Palo Alto Com. for Fair Assessment v. City Council,*
   180 Cal. App. 3d 384 (1986) ............................................................................................ 19

*Eger v. VW Credit, Inc.,*
   No. Civ. 05CV2224LWMC, 2007 WL 433274 (S.D. Cal., Jan. 29, 2007) ......................... 19

*Harris v. Vector Marketing Corp.,*
   656 F. Supp. 2d 1128 (N.D. Cal. 2009) ........................................................................... 17

*Hernandez v. BCI Coca-Cola Bottling Co.,*
   554 F. App'x 661 (9th Cir. 2014) ............................................................................... 15, 19

*Hibbs-Rines v. Seagate Techs., LLC.,*
   No. C 08-05430 SI, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ...................................... 19

*In re Taco Bell Wage and Hour Actions,*
   No. 1:07-cv-0314-SAB, 2016 WL 2755938 (E.D. Cal. April 8, 2016) ................................ 18

*Kirby v. Immoos,*
   53 Cal. 4th 1244 (2012) ................................................................................................... 14

*Kizer v. County of San Mateo,*
   53 Cal. 3d 139 (1991) ...................................................................................................... 19

*Magadia v. Wal-Mart Assocs., Inc.,*
   319 F. Supp. 3d 1180 (N.D. Cal. 2018) ........................................................................... 15

*Morgan v. United Retail Inc.,*
   186 Cal. App. 4th 1136 (2010) ................................................................................... 14, 15

*Naranjo v. Spectrum Security Services, Inc.,*
   40 Cal. App. 5th 444 (2019) ....................................................................................... 13, 14

1

**Table of Authorities**

2

(continued)

3

**Page(s)**

4

**Cases**

5
*Ontiveros v. Satelite Fulfillment, Inc.*,
  No. CV 15-7118-DMG (RAOx), 2017 WL 6261476 (C.D. Cal. Oct. 12, 2017) ..................... 15

6
*Palazzolo v. Children's Hospital Los Angeles*,
  No. B216508, 2010 WL 4869755 (Cal. Ct. App. Dec. 1, 2010)............................................ 13

7

8
*Plaisted v. Dress Barn, Inc.*,
  No. 2:12-cv-01679-ODW (SHx), 2012 WL 4356158 (C.D. Cal. Sept. 20, 2012) ................... 19

9
*Price v. Starbucks*,
  192 Cal. App. 4th 1136 (2011) ............................................................................... 13

10

11
*Reber v. AIMCO/Bethesda Holdings, Inc.*,
  No. SA CV07-0607 DOC (RZx), 2008 WL 4384147 (C.D. Cal., Aug. 25, 2008).................... 17

12
*Sanchez v. New York & Co. Stores, Inc.*,
  No. 2:20-CV-02380-RGK-GJS, 2020 WL 5498066 (C.D. Cal. June 29, 2020) ..................... 14

13

14
*Zackaria v. Wal-Mart Stores, Inc.*,
  142 F. Supp. 3d 949 (C.D. Cal. 2015) ........................................................................ 18

15
**Statutes**

16
Cal. Lab. Code § 203 .............................................................................................. 19

17
Cal. Lab. Code § 226 ............................................................................. 13, 14, 15, 23

18
Cal. Lab. Code § 226(a) ................................................................................... passim

19
Cal. Lab. Code § 226(a)(3) ...................................................................................... 11

20
Cal. Lab. Code § 226(a)(9) ............................................................................... 16, 19

21
Cal. Lab. Code § 226(e) ................................................................................. 18, 19, 20

22
Cal. Lab. Code § 226(e)(2) ...................................................................................... 18

23
Cal. Lab. Code § 226(e)(2)(C) .................................................................................. 18

24
Cal. Lab. Code § 2699 ............................................................................................ 20

25
Cal. Lab. Code § 2699(a) ........................................................................................ 21

26
Cal. Lab. Code § 2699(f)(2)...................................................................................... 21

27
//

28
//

**Table of Authorities**

(continued)

**Page(s)**

**Other Authorities**

IWC Wage Order # 9 .......................................................................................... 11, 15

IWC Wage Order #9, §7(B) ................................................................................. 10, 12

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................... 9

**Regulations**

8 Cal. Code 6 Regs. § 13520 ..................................................................................... 16

1

## I.   **INTRODUCTION**

2       Plaintiff Emilia Santos ("Plaintiff"), a former Part-Time Preload Supervisor who worked

3  for United Parcel Service, Inc., an Ohio Corporation ("UPS") for less than seven months, brings

4  claims against UPS for a variety of wage and hour violations, on her own behalf and on behalf of

5  other Part-Time Preload Supervisors ("Preload PTS").   On November 18, 2020 the Court denied

6  Plaintiff's Motion for Class Certification (Dkt. No. 115) as to five out of six subclasses.   Dkt. No.

7  115, *passim*.   The Court certified one putative class comprised of Preload PTS "who were not

8  provided with accurately itemized wage statements listing all hours worked and other information

9  required to be listed under California Labor Code § 226(a) and Wage Order 9." Dkt. No. 115,

10 15:19-16:1.

11      UPS now moves for summary judgment on the Fourth Cause of Action as to Plaintiff and

12 the certified class because, at all times relevant to this action, UPS provided all Preload PTS with

13 accurately itemized wage statements, containing all the elements required by the California Labor

14 Code and Wage Order 9.   Specifically, the Labor Code and Wage Order 9 require UPS to list

15 certain specific pieces of information on employee's wage statements.   Because UPS's wage

16 statements contain the applicable nine categories of information required by the Labor Code and

17 the four categories required by Wage Order 9, summary judgment is proper on Plaintiff's

18 individual and class claim as to the Fourth Cause of Action.

19      UPS also moves for partial summary judgment on Plaintiff's claim for civil penalties

20 under the Private Attorneys General Act ("PAGA") as it relates to the wage statements because

21 where, as here, Plaintiff cannot establish a violation of the Labor Code or the applicable Wage

22 Order, no civil penalties under PAGA attach.

23      Furthermore, UPS moves for summary judgment as to the Second Cause of Action on

24 Plaintiff's individual rest period claim.   During her deposition, Plaintiff admitted that during her

25 shifts as a Part-Time Preload Supervisor, the entire building would shut down and everyone

26 would take an uninterrupted 15-minute rest break.   Deposition of Emilia Santos ("Santos Depo.")

27 //

28 //

1  //

2  85:10-19.[1]  Plaintiff's admissions that she was provided with uninterrupted rest-breaks are fatal to

3  her individual claim.

4  **II.**     **FACTUAL AND PROCEDURAL BACKGROUND**

5       **A.**     **Overview of UPS's Operations and Part Time Supervisor Position**

6             UPS is a global transportation and logistics company that employs tens of thousands of

7  hourly, non-exempt employees throughout California, including drivers, loaders, unloaders,

8  preloaders, sorters, clerical and other office staff, part time supervisors and many others.  Brown

9  Decl., Ex. L (Waters Decl. ¶2).  The majority of hourly employees in the smaller "package

10  centers" and larger "hubs" unload, sort, and load packages of various sizes into and out of

11  vehicles, under the supervision of hourly part-time non-exempt supervisors.  *Id*.  These

12  employees work one of several different shifts, with shift start times varying depending on the

13  anticipated package volume.  *Id*.  One of the shifts (or "sorts") is the "Preload."  *Id*.  Preload

14  generally runs from 3:30 a.m. until 9 a.m. or 9:30 a.m. Brown Decl., Ex. B (Castaldi-Inman Decl.,

15  ¶ 4).  During the relevant time period, there were approximately 2,104 Preload PTS, of which

16  approximately 1,066 received at least one California Meal Period Premium payment.  Declaration

17  of Derrick Waters in Support of Defendant's Motion for Summary Judgment dated March 29,

18  2021 ("Waters MSJ Decl.") ¶ 2.

19       **B.**     **Plaintiff's Employment with UPS**

20             Plaintiff worked as a Preload PTS in San Ramon for less than seven months between July

21  2017 and February 2018.  Brown Decl., Ex. A (Santos Depo. 62:11-17).  Plaintiff typically

22  worked 5.5 hours per day, although there were days that she worked less.  *Id*.  (Santos Depo.

23  79:9-16.)  For example, at one point, Plaintiff informed UPS that she could not work longer than

24  4½ hours because she had a second job at Southwest Airlines, which UPS accommodated.  *Id*.

25  (Santos Depo. 14:24-15:1; 126:18-127:15.)  From October/November 2017 through the end of

26  

27  _____
[1] Declarations and deposition testimony of Plaintiff, Preload PTS, and other UPS employees
relied on by Defendant have been authenticated by the concurrently filed declaration of Elizabeth

28  A. Brown ("Brown Decl.") dated March 30, 2021, and attached as exhibits thereto.

her employment (in other words, during the only "peak" of her employment), Plaintiff performed "paperwork" on the upper level of the facility as an accommodation for a foot injury.  *Id.*  (Santos Depo. 36:11-21; 37:23-38:3.)

During her new hire orientation, Plaintiff received training on UPS's meal period and rest break policies and policy prohibiting off-the-clock work.  Brown Decl., Ex. A (Santos Depo. 90:14-25; 91:1-7; 101:7-25).  Plaintiff understood that UPS's policy required that she promptly notify her supervisor or Human Resources if, for any reason, she did not have an opportunity to take a meal or rest period, or if she worked during meal or rest breaks.  *Id.*  (Santos Depo. 125:3-18; 126:3-5.)

If UPS failed to provide a Preload PTS a meal period, it paid a meal period premium.  On occasion, Plaintiff was paid meal period premiums.  Brown Decl., Ex. A (Santos Depo. 164:1-16; 164:22-165:1.)  Other Preload PTS likewise received meal period premiums on occasion.  Brown Decl., Exs. C, D, E, F, and G (Fecher Depo 34:14-16; Muela Depo. 26:11-22; Flores Decl. ¶ 9; Kelly Decl. ¶ 9, Mendoza Decl. ¶ 13).

Plaintiff received additional training on the Meal and Rest Periods/Off-the-Clock Work policy throughout her employment during Prework Communication Meetings ("PCM").  Brown Decl., Ex. A (Santos Depo. 122:3-123:16, 126:6-17, Ex. 5).  Plaintiff acknowledged that the Meal and Rest Periods/Off-the-Clock Work policy was posted outside the supervisor's office at the San Ramon facility.  *Id.*  (Santos Depo. 123:17-21.) Plaintiff testified that she had never seen anything in writing that contradicts UPS's Meal and Rest Periods Off-the-Clock Work policy.  *Id.*  (Santos Depo. 122:25-125:2; *see also* 100:19-101:2.) Furthermore, nobody ever told Plaintiff that these policies did not apply to her as a Preload PTS.  *Id.*  (Santos Depo. 85:4-6.)

Plaintiff testified that during her employment with UPS as a Preload PTS, the entire building would shut down and everyone would take an uninterrupted 15-minute rest break.  Brown Decl., Ex. A (Santos Depo. 85:10-19).  Plaintiff admitted that this "happened every day" and that no one prevented her from taking a 15-minute rest break and that she never worked during her rest breaks.  *Id.*  (Santos Depo. 85:20-22; 152:21-153:4.)

In early February 2018, Plaintiff informed Human Resources that she was resigning from

her UPS employment because Southwest believed that she was an "asset" and wanted her to move up within the company, and because she claimed that her UPS supervisor took a photo of the front of her pants.  Brown Decl., Ex. A (Santos Depo. 147:19-148:5).  Plaintiff did not say anything else to anyone about the reason why she resigned and did not complain about her wage statements or her meal and rest breaks.  *Id.*  (Santos Depo. 148:15-20.) Plaintiff later admitted that before she left, she had already decided to sue UPS and had attempted to collect evidence for such a lawsuit.  *Id.*  (Santos Depo. 26:23-27:7; 27:20-28:12.)

     **C.**     **UPS's Wage Statements**

     During the relevant time period,[2] all Preload PTS in California received itemized wage statements.  Waters MSJ Decl. ¶ 3.  Some Preload PTS received live checks and wage statements together.  *Id*.  Most frequently, however, Preload PTS received their wages via direct deposit and received wage statements separately.  *Id*.  Itemized wage statements were and continue to be available to Preload PTS online at UPSers.com.  Waters MSJ Decl., ¶ 4.  Meal period premiums are denoted on Preload PTS wage statements as "Cal Meal." Waters MSJ Decl. ¶ 5, Ex. A; Brown Decl. (Santos Depo. 164:22-165:1); Exs. C and H (Fecher Depo 35:16-36:23; Rico Decl. ¶ 10).

//

//

//

//

//

//

//

//

//

//

---

[2] The relevant time period for the certified wage statement claim is May 29, 2017 to present.

//

The format of the wage statements issued to Plaintiff and other Preload PTS During the relevant time period is as follows:[3]:



| Employee Name | | | Work Location | | Advice No. |
|---|---|---|---|---|---|
| - EMILIA L SANTOS | | | 0386 CASNR 920 9616 P ZZZ 0 | | 0386013041 |
| Employee ID | Tax ID | Fed Status | St Wrk | St Res Status | Advice Date |
| - 5077277 | XXX-XX-5121 | $0 00 | $0 00 | | 12/14/2017 |

| Earnings Statement | | Period Begin | Period End | Total Earned | Total Taxes | Total Deducted | Net Amount |
|---|---|---|---|---|---|---|---|
| - | | 12/03/2017 | 12/09/2017 | 1,359.00 | 399.79 | 106.26 | 852.95 |

| Earnings | | | | | Taxes - Deductions - Misc | | |
|---|---|---|---|---|---|---|---|
| Description | Rate | Miles | Hours | Gross | Description | Current | YTD |
| - CURRENT PAY RATE | 18.00 | | | | TAXES | | |
| - REGULAR | 18.000 | 40.00 | 720.00 | | FICA | 82.73 | 1,143.08 |
| - OVERTIME | 27.000 | 23.00 | 621.00 | | FICA MEDICARE | 19.34 | 267.33 |
| - CAL MEAL | | | 18.00 | | FEDERAL TAX | 220.18 | 2,177.32 |
| - TOTAL HOURS WORKED | 63.00 | | | | ST TAX- CA | 65.53 | 373.57 |
| - CURRENT TOTALS | | | 1,359.00 | | STATE DISAB | 12.01 | 165.93 |
| - Y-T-D TOTALS | | 1,128.27 | 18,800.01 | | TOTALS | 399.79 | |
| - | | | | | DEDUCTIONS | | |
| - | | | | | BFTAX FLEX | 24.72 | 370.80 |
| - | | | | | 401K DED | 6  81.54 | 362.89 |
| - | | | | | TOTALS | 106.26 | |
| - VAC 0.00  D OPD 0.00  D OPW 0.00  H OTH 0.00  D PST 11.00  H | | | | | | | |

P.O. BOX 15
SUNOL ,CA ,94586

Employee Address

UNITED PARCEL SERVICE, INC.
55 GLENLAKE PARKWAY NE
ATLANTA , GA 30328

### D.   <u>**Plaintiff Understood UPS's Wage Statements and Meal Premium Payments.**</u>

Plaintiff testified that her pay-stubs accurately reflected the amount of money she was paid, and that she was provided her paystubs in a timely manner.  Brown Decl., Ex. A (Santos Dep. 57:19-58:9 ("Q: Okay.  So I'm talking about the pay stubs that you received, okay -- A: Okay.  Q: -- during your employment as a part-time supervisor at UPS.  Those pay stubs reflect what you were actually paid, correct?  A: Yes.  … Q: And you're not claiming that UPS did not give you pay stubs in a timely manner, are you?  A: No.").)  Plaintiff further agreed that her wage statements did not contain any inaccuracies.  *Id.*  (Santos Depo 57:24-58:6 ("Q: Those pay stubs reflect what you were actually paid, correct?  A: Yes.  Q: They don't contain any inaccuracies.  Is

---

[3] A true and correct copy of the December 14, 2017 wage statement for Plaintiff is attached as Exhibit A to the Declaration of Derrick Waters.  Part Time Preload Supervisors who opt to receive their pay through live checks receive wage statements attached to the checks.  *See* Waters MSJ Decl. ¶ 3.

that correct?  A: No. No. Q: You agree?  A: Yes.").)

Plaintiff further admitted that when she missed meal periods, she received meal premiums, and that she understood that the meal premiums were paid at her hourly pay rate. *Id.* (Santos Depo. 164:1-16 ("Q: You received the California meal period premium at your hourly rate of pay.  Do you see that?  A: Yes.  Q: So you recall that you were, in fact, paid meal premiums for meal periods you did not take?  A: Yes.  Q: -- UPS Paid you California meal period premiums.  Is that correct?  A: Yes"); 163:22-25 ("Q: Pay period ending December 9th, 2017, you were paid another California meal period premium.  Do you see that?  A: Yes").)

### E.   Class Member Testimony Confirms that Employees Can Ascertain Required Information from the UPS Wage Statements.

Plaintiff's testimony is consistent with class member testimony.  When deposed in connection with the motion for class certification, other Preload PTS agreed that they received meal period premiums and understood how those premiums were paid and noted on the wage statements, the number of meal period premiums paid, and the rate at which they were paid.

- Clement Depo 21:8-13 ("Q. As a part-time supervisor, did you understand that under UPS policy, if an employee is not provided with a meal period, the employee receives a meal period premium equal to one hour of pay?  A. Yes.")

- Fecher Depo 34:14-16 ("Since I started looking at my pay stubs with the coronavirus, I've noticed several of them, I've gotten several California meals.")

- Fecher Depo 35:16-36:23 ("Q: Okay.  Sir, this is a Pay History Report and this is for the pay period ending December 14, 2019.  I'm not sure if you can see my cursor, but I'll point on the document.  Do you see that?  A: Yes, sir.  Q: And do you see that there are California meal -- there's an earning code, Earn CD it says on the document, of CAM and the description is California meal?  Do you see that?  A: Yes, sir.  Q: Do you understand that to be a California meal premium?  A: I do now, yes, sir.  Q: And at this time your hourly rate, your regular pay rate is $21.68 per hour; is that correct?  A: Currently, yes, sir.  Q: And would that have been the case in December of 2019 when this paycheck was issued?  A: I can't

recall if I got my pay raise then at that time because I know they usually do it the first quarter.  Q: Okay.  Well, this document represents that the pay rate is $21.68 and it appears that you were paid $108.40 in California meal premiums.  Do you see that?  A: Yes, sir.  **Q: So you would be able to divide $108.40 by $21.68 and determine that that would represent five hours of pay; right?  A: Yes, sir.**")

(emphasis added)

Brown Decl., Exs. C and I.

Other class members, likewise, admitted that they understood the amount and the rate of their meal premiums on their wage statements:

- Rico Decl. ¶ 10 ("My supervisor always approved my time card and the CAM[4] payments.  When I saw the CAM payment on my paychecks, I always knew how many premiums were included in the payment and I did not find the CAM entries confusing.")

- Valasco Decl. ¶ 13 ("Sometimes I voluntarily forgo my lunch break so that I can go home earlier.  I do not record my meal break when I do this, and I am paid the meal premium with my paycheck.  My supervisor has asked me if my time is accurate on the days it does not show a meal period.  I confirm that my time is accurate and he approves the payment of the meal premium.  **I have never had a problem counting the number of meal premiums I receive in a paycheck**.")

- Mendoza Decl. ¶ 13 ("When I saw the CAM payment on my paychecks, I always knew how many premiums were included in the payment and I did not find the Cal Lunch entries confusing.") (emphasis added)

- Murillo Decl. ¶ 12 ("It is easy to count how many meal violations are in the payment and I am not confused about the number.")

Brown Decl. Exs. G, H, J, and K.

//

---

[4] California meal premium payment, which appears as "Cal Meal" on wage statements, is coded in UPS's payroll system under the code "CAM." Waters MSJ Decl. ¶ 5.

1    //

2    **F.    Plaintiff's Motion for Class Certification and Court Order Certifying the**
     **Wage Statement Subclass**

3

4          On August 18, 2020 2020, Plaintiff moved for class certification as to the class of Preload

5    PTS on six different subclasses:

6          1.    A subclass of all former and current Preload PTS who were not paid for all hours

7                worked during the class period ("The Unpaid Time Subclass");

8          2.    A subclass of all former and current Preload PTS who worked more than five

9                hours, or more than six hours if subject to a valid first meal break waiver, and/or

10               worked more than 10 hours, or more than 12 hours if subject to a valid second

11               meal break waiver, and were not provided with uninterruptable meal periods of at

12               least 30 minutes ("The Meal Break Subclass");

13         3.    A subclass of all former and current Preload PTS who signed a meal break waiver

14               when they held a different position than that of a part time supervisor, and did not

15               sign a new meal break wavier when they changed position to part time supervisor

16               ("The Meal Break Waiver Subclass");

17         4.    A subclass of all former and current Preload PTS who were not provided an

18               uninterruptable rest break of at least 10 minutes for each four hours of work ("The

19               Rest Break Subclass");

20         5.    A subclass of all former and current Preload PTS who were not provided with an

21               accurately itemized wage statement list all hours worked and "other information"

22               required to be listed under California Labor Code section 226(a) ("The Wage

23               Statement Subclass"); and

24         6.    A subclass of all former and current Preload PTS who were not paid all wages

25               "due and ongoing" at the time of termination ("The Waiting Time Subclass").

     Dkt. 64, p.13.

26         On November 18, 2020, the Court denied class certification as to subclasses one, two,

27   three, four, and six and granted it as to subclass five – the Wage Statement Subclass.  Dkt. No.

28

---

115.  In doing so, the Court certified a subclass of Preload PTS "who were not provided with accurately itemized wage statements listing all hours worked and other information required to be listed under California Labor Code § 226(a) and Wage Order 9." Dkt. No. 115, 15:19-16:1.

With respect to the Wage Statement Subclass, Plaintiff argued that class members' wage statements were inaccurate and violated Labor Code section 226(a) on two different grounds. First, Plaintiff argued derivative claim that UPS's wage statements were inaccurate because UPS "required Class Members to record meal breaks they did not take" which in turn lead UPS to "knowingly issue wage statements that did not show all hours worked." Dkt. No. 64, p. 20.  This theory was expressly rejected by the Court.  Dkt. No. 115, p. 14 (refusing to certify Plaintiff's derivative wage statement claims on the grounds that putative class members' wage statements were inaccurate due to allegations that UPS required putative class members to record meal breaks they did not take because "UPS's records show that meal breaks are uniformly present on putative class members' timecards.  The vast majority of analyzed time shifts (98.1%) *did* show a meal break on shifts greater than five hours.").

Plaintiff also argued that UPS's wage statements directly violated section 226(a) because "UPS does not record meal break premium payments as a work activity hour."  Instead, Plaintiff contended that UPS represents meal premiums paid to employees as "a flat dollar amount."  Dkt. 64, pp. 20-21.  The Court limited its certification to Plaintiff's wage statement subclass on this theory, explaining that the "[alleged] failure to provide the requisite specificity" is an issue that "can be adjudicated in no one stroke" because "the form of the wage statement is uniform for all members of the putative class."  Dkt. No. 115, p. 15.

## III.    SUMMARY JUDGMENT IS PROPER AS TO THE PLAINTIFF AND THE CERTIFIED CLASS ON THE WAGE STATEMENT CLAIM

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 also authorizes partial summary judgment in order to limit the issues to be tried. *State Farm Fire & Cas.  Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987).  Once the moving party demonstrates the absence of a factual dispute, the nonmoving party can defeat summary

1    judgment only by designating "specific facts showing that there is a genuine issue for trial."

2    *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

3           As detailed below, UPS is entitled to judgment as a matter of law as to Plaintiff and the

4    sole certified class claim related to alleged violation of Labor Code Section 226 and Wage Order

5    9.  UPS is also entitled to summary judgment as to Plaintiff's individual rest break claim.

6    **A.**     **<u>Labor Code Section 226 and Wage Order 9 Require Employers to Issue</u>**
            **<u>Itemized Wage Statements Containing Certain Limited Information</u>**
7
           California Labor Code Section 226(a) requires that employers provide their employees
8
     with semimonthly
9
           accurate itemized [wage] statement[s] in writing showing: (1) gross wages earned,
10          (2) total hours worked by the employee … ( 3) the number of piece-rate units
            earned and any applicable piece rate if the employee is paid on a piece-rate basis,
11          (4) all deductions, provided that all deductions made on written orders of the
            employee may be aggregated and shown as one item, (5) net wages earned, (6) the
12          inclusive dates of the period for which the employee is paid, (7) the name of the
            employee and only the last four digits of his or her social security number or an
13          employee identification number other than a social security number, (8) the name
            and address of the legal entity that is the employer … and (9) all applicable hourly
14          rates in effect during the pay period and the corresponding number of hours
            worked at each hourly rate by the employee.
15
16         Wage Order 9, which applies to the transportation industry, states that:

17          [e]very employer shall semimonthly or at the time of each payment of wages
            furnish each employee, either as a detachable part of the check, draft, or voucher
18          paying the employee's wages, or separately, an itemized statement in writing
            showing: (1) all deductions; (2) the inclusive dates of the period for which the
19          employee is paid; (3) the name of the employee or the employee's social security
            number; and (4) the name of the employer, provided all deductions made on
20          written orders of the employee may be aggregated and shown as one item."

21   IWC Wage Order #9, §7(B).

22   **B.**     **<u>UPS's Wage Statements Contain All the Information Required by Labor</u>**
            **<u>Code Section 226(a) and Wage Order 9</u>**
23
           With respect to Plaintiff and the certified class of Preload PTS, the wage statements
24
     contain all the elements required by the Labor Code and the Wage Order.  As such, summary
25
     judgment as to the certified Wage Statement Subclass is proper.
26
           **1.**     **UPS Wage Statements Contain All the Elements Required by Section**
27                **226(a) and Wage Order 9**

28         As noted above, Labor Code Section 226(a) requires that the employer list up to nine

items on the wage statements.  Wage Order 9 requires four.  UPS wage statements contain all the required elements of section 226(a), to the extent they apply[5]:



//

//

//

//

//

//

//

//

//

//

---

[5] UPS Preload PTS do not receive piece rate compensation.  As such, section 226(a)(3) does not apply.

//

Likewise, UPS wage statements contain all the required elements of Wage Order 9:



Because UPS's wage statements issued to Plaintiff and other Preload PTS contain all the elements required by section 226(a) and the Wage Order 9, summary judgment as to the certified class on Plaintiff's Fourth Cause of Action is proper.

### 2. The California Meal Period Payment Inclusion Does Not Render UPS Wage Statements Unlawful

As demonstrated above, UPS's wage statements issued to Plaintiff and Preload PTS contain all the elements required by the Labor Code and the Wage Order.  The notation of California meal premiums on some of the wage statements issued to a subset of the certified class of Preload PTS does not render those class members' wage statements unlawful.

As set forth in the Motion for Class Certification, Plaintiff's certified wage statement claim is predicated on an argument that UPS's wage statements violated section 226(a) because UPS lists its meal premium payments as a lump sum and does not specifically state the number of meal premiums paid or the rate at which an employee's meal premium is paid.  Dkt. 64, p. 20, 21.

1 | Plaintiff further contended that because UPS's wage statements list meal premiums as a lump sum

2 | amount owed "employees are not able to discern from a wage statement alone if they are being paid

3 | meal break premiums correctly and for how many hours." *Id.* at p. 21. Finally, Plaintiff claimed

4 | that because UPS's wage statements do not list the hourly rate of a meal premium, the wage

5 | statements violate section 226(a). *Id.*

6 | Plaintiff's wage statement claim, narrowed to the California Meal Period Premium

7 | allegation, fares no better than a general argument that UPS's wage statements do not contain all

8 | the require elements from the Labor Code and the Wage Order 9.

### a. UPS Is Not Required to List Rate or Number of Meal Premiums Because Meal Premiums are Not "Wages" or "Hours Worked" as Contemplated by Section 226(a)

11 | Plaintiff's argument fails at the onset because UPS is not required to list the number of

12 | meal period premiums or the rate at which they are paid as they are not enumerated in either the

13 | Labor Code or the Wage Order. There are nine itemized requirements listed in section 226, and

14 | UPS's wages statements contain all of the enumerated items. *See Price v. Starbucks*, 192 Cal.

15 | App. 4th 1136, 1142 (2011), *rev. denied* (noting that section 226 lists nine specific

16 | requirements); *see* Section III.A *supra.* There are four itemized requirements listed in Section

17 | 7(B) of Wage Order 9, and UPS's wage statements contain all of those items. *See* Section III.B.1

18 | *supra.* There is no requirement that UPS provide wage statements that specifically state the total

19 | number of premiums paid. It is axiomatic that an employer cannot be held liable for violation of

20 | section 226 unless its wage statements actually omit something that is required by law. *See e.g.*

21 | *Palazzolo v. Children's Hospital Los Angeles*, No. B216508, 2010 WL 4869755, at *6 (Cal. Ct.

22 | App. Dec. 1, 2010) (denying plaintiff's wage statement claim predicated on the defendant's

23 | failure to provide a total summation of regular hours worked with overtime hours worked because

24 | section 226 "does not require the employer to list total regular hours and the total overtime hours

25 | worked during the pay period, and then add those two figures together in a separate line listing

26 | the sum of all hours worked."). Accordingly, as a matter of law, UPS's wage statements are

27 | compliant and Plaintiff's class claims should be dismissed.

28 |

1       *Naranjo v. Spectrum Security Services, Inc.*, 40 Cal. App. 5th 444 (2019) is instructive.

2   There, the Court held that that derivate wage statement claims are not available to employees who

3   allege that an employer failed to pay meal premiums.  The *Naranjo* court, citing *Kirby*, held that

4   because meal premiums are not wages "earned" but rather "a statutory remedy for an employer's

5   conduct" derivative wage statement claims are not available when the employee only alleges

6   inaccurate wage statement due to the employer's failure to pay premiums.  *See Naranjo,* 40 Cal.

7   App. 4th at 474 ("The language in sections 200, 203, and 226 is clear and unambiguous and there

8   is nothing for this court to interpret or construe.  Accordingly, we hold that section 226.7 actions

9   [alleging to failure to pay premiums] do not entitle employees to pursue the derivative penalties in

10  sections 203 and 226.") (internal citation omitted).  Therefore, even if UPS paid no meal period

11  premiums at all or paid them but did not list them on the wage statement no wage statement

12  violation would arise.  *See also Sanchez v. New York & Co. Stores, Inc.*, No. 2:20-CV-02380-

13  RGK-GJS, 2020 WL 5498066, at *3 (C.D.  Cal. June 29, 2020) ("rest break premiums do not

14  constitute wages for purposes of a § 226(a) analysis"); *Benitez v. W. Milling, LLC*, No. 1:18-CV-

15  01484-SKO, 2020 WL 309200, at *9 (E.D.  Cal. Jan.  21, 2020).  California meal period

16  premiums are, by their nature, not "hours worked."  They are a penalty, paid when an employee

17  was not provided a meal period.  *Kirby v. Immoos*, 53 Cal. 4th 1244, 1259 (2012) (action for

18  premiums is not action for the recovery of wages).

19      Where, as here, UPS paid *and* listed the premiums on the wage statement, going above

20  and beyond what the law requires, no additional violation can be found for purported failure to

21  add a wage rate at which the premium is paid.  Indeed, expressing the meal period premium in

22  terms of hours "worked" and rate at which it was "worked" would render the wage statements

23  confusing and, thus, contrary to the stated aim of the Labor Code.

24                **b.**    **Meal Period Premiums are Properly Represented**

25      Even if UPS were required to identify the number of meal period premiums paid on the

26  wage statement, UPS has substantially complied with this requirement.

27      Labor Code section 226 requires employers to "provide accurate itemized statements to

28  their employees."  *Morgan v.  United Retail Inc.*, 186 Cal. App. 4th 1136, 1143 (2010), *rev.*

1   *denied*.  Section 226(a)(9) provides in relevant part: "Every employer shall … furnish each of his

2   or her employees … an accurate itemized statement in writing **showing** [various elements

3   required by the Section]."  Lab. Code§ 226(a)(9) (emphasis added).  The California Court of

4   Appeal held that the term "showing" in section 226(a) must be given its "ordinary, usual

5   meaning," which, inter alia, means ''to make evident or apparent: serve as the means to reveal or

6   make visible." *Id.* at 1146.  Examining plaintiff's contention in *Morgan* that the wage statement

7   was inaccurate because it did not contain a notation for "total" hours, the court concluded that it

8   was undisputed that an employee could simply add the hours together to obtain his or her total

9   hours ''without referring to time records or other documents," the Court concluded:

10
11          There is nothing in the plain language of section 226 to support
            [plaintiff's] argument that wage statements which accurately list
            the total regular hours and overtime hours worked during the pay
12          period must also contain a separate category with the sum of those
            two figures.

13   *Id.* at 1147.

14          Later courts, when presented with similar issues, concurred.  A wage statement complies

15   with Labor Code Section 226(a) "when a plaintiff employee can ascertain the required

16   information by performing simple math, using figures on the face of the wage statement."

17   *Hernandez v. BCI Coca-Cola Bottling Co.*, 554 F. App'x 661, 662 (9th Cir. 2014), citing *Morgan*

18   *v. United Retail Inc.*, 186 Cal. App. 4th 1136 (2010).  *See also Magadia v. Wal-Mart Assocs.*,

19   *Inc.*, 319 F. Supp. 3d 1180, 1190 (N.D. Cal. 2018) ("[I]f a wage statement does not list a

20   plaintiff's hourly rate it may still comply with §226(a)(9) if it indicates hours worked and total

21   pay because the employee can divide total pay by hours worked to determine the hourly rate.");

22   *Ontiveros v. Satelite Fulfillment, Inc.*, No. CV 15-7118-DMG (RAOx), 2017 WL 6261476, at *7

23   (C.D. Cal. Oct. 12, 2017) (wage statement not violative of Section 226(a) if employee can

24   perform simple division and addition).

25          The meal period premium, denominated as "Cal Meal" on the Preload PTS wage

26   statements, is understandable and ascertainable on the face of the wage statement, as confirmed

27   by a number class member Preload PTS.  *See* Section II.E *supra.* Both the total paid for meal

28

1   period premiums and the hourly rate are identified on the wage statement.  All the information

2   necessary to ascertain how many premiums are paid is listed and no outside information is needed

3   to understand the payment.  Indeed, even when presented with a wage statement in the middle of

4   a deposition, not one Preload PTS had any trouble performing the simple arithmetic to understand

5   how many premiums he or she received.  *See* Section II.E *supra*.  Plaintiff herself affirmed her

6   understanding that she received a California meal period premium and that this premium was paid

7   at the hourly rate of pay.  Brown Decl., Ex. A (Santos Dep. 164:1-4 ("Q: You received the

8   California meal period premium at your hourly rate of pay.  Do you see that?  A: Yes.").)  Preload

9   PTS wage statements which show California meal period premiums as a lump sum amount

10  alongside information regarding employee's regular rate of pay comply with Section 226 and

11  Wage Order 9.

12      **C.      Summary Judgment is Proper on UPS's Third Separate and Affirmative**
            **Defense Because Plaintiff Cannot Establish That She or the Class Suffered**
13          **Injury from any Allegedly Improper Wage Statement**

14          Even if UPS's wage statement were deemed noncompliant with Labor Code Section

15  226(a), Plaintiff would still be required to prove that she and Preload PTS suffered injury on

16  account of the alleged violation in order to claim statutory penalties under Section 226(e).  She

17  cannot do so.

18          An employee is only "deemed to have suffer[ed] an injury" if the employee is unable to

19  "promptly and easily determine" (1) the gross or net wages paid; (2) which deductions the

20  employer made from the employee's gross wages; (3) the name and address of the employer; or

21  (4) the name of the employee and the last four digits of his or her social security number (or an

22  employee identification number other than a social security number).  Cal. Lab. Code § 226(e)(2).

23  "Promptly and easily determine" means a reasonable person would be able to readily ascertain the

24  information without reference to other documents or information.  Cal. Lab. Code § 226(e)(2)(C).

25          As discussed above, all the information Plaintiff or Preload PTS would need to determine

26  the number of meal premiums paid is "readily ascertain[able]" from the wage statement "without

27  reference to other documents or information."  Cal. Lab. Code Section 226(e)(2)(C).  All Plaintiff

28  or any other Preload PTS would have to do to determine the number of meal periods paid on any

given pay period is to divide the "Cal Meal" payment by his or her hourly rate (clearly displayed on the same wage statement).  *See* Sections II.E, II.B.2.b *supra.*  That the UPS wage statement requires Plaintiff to perform simple division does not, as a matter of law, constitute "injury" for purposes of Labor Code section 226(e).  *See, e.g., Price*, 192 Cal. App. 4th at 1143 ("simple math" insufficient to establish section 226(e) injury).  And Plaintiff confirmed that she was not confused.  Brown Decl., Ex. A (Santos Depo 164:1-16 ("Q: You received the California meal period premium at your hourly rate of pay.  Do you see that?  A: Yes.  Q: So you recall that you were, in fact, paid meal premiums for meal periods you did not take?  A: Yes.  Q: -- UPS Paid you California meal period premiums.  Is that correct?  A: Yes"); 163:22-25 ("Q: Pay period ending December 23rd, 2017, you were paid another California meal period premium.  Do you see that?  A: Yes").)[6]

### D.   Summary Judgment is Proper on Defendant's Tenth Separate and Affirmative Defense because Plaintiff Cannot Show Any Intention to Violate the Statute

Finally, even if Plaintiff were able to demonstrate noncompliance with Labor Code section 226(a)(9) and were able to demonstrate "injury" cognizable by section 226(e), her claim for statutory penalties still fails because she cannot establish that UPS "knowingly and intentionally" failed to comply with section 226(a)(9).

*Amaral v. Cintas Corporation No. 2*, 163 Cal. App. 4th 1157, 1195, 1201-04 (2008), set forth the requirements of the "good faith" defense to penalties imposed pursuant to Labor Code section 203, which also apply to the imposition of statutory penalties pursuant to Labor Code section 226(e).  *See, e.g., Harris v. Vector Marketing Corp.,* 656 F. Supp. 2d 1128, 1145-46 (N.D. Cal. 2009); *Reber v. AIMCO/Bethesda Holdings, Inc.,* No. SA CV07-0607 DOC (RZx), 2008 WL

---

[6] To the extent Plaintiff attempts to argue in her Opposition that while she understood her wage statement, others did not, such an argument would be an admission that Plaintiff lacks standing to pursue both the class and the representative claims, which would require decertification of the class. *Bates v.  United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.  2007); *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir.  2001) ("In order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining some direct injury as a result of the challenged statute or official conduct.") (internal quotations omitted).  *See also Williams v.  Superior Court*, 3 Cal. 5th 531, 558, (2017) ("PAGA imposes a standing requirement; to bring an action, one must have suffered harm.").

4384147, at *9 (C.D. Cal., Aug. 25, 2008).  In this respect, a "good faith dispute" occurs "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Amaral,* 163 Cal. App. 4th at 1201, quoting from 8 Cal. Code 6 Regs. § 13520.  Moreover, the "fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id*.  Rather, "[s]o long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness." *Id.* at 1204.  In particular, a good faith defense exists if "the state of the law was not clear," as when there are conflicting appellate decisions. *Id.* at 1201.

UPS has a good-faith defense to Labor Code section 226(e).  Based on *Morgan* and its progeny, UPS wage statement does not violate Labor Code section 226(a) and, in any event, substantially complies with it.  Insofar as there is no statute requiring the meal premium wage rate to be separately stated or a requirement that the specific number of meal premiums paid per wage statement, at most this Court would have to conclude that "the state of the law [is] not clear."  As a matter of law, UPS has a good faith defense to any violation of section 226(e).

**E.     Summary Judgment as to the Seventh Cause of Action on Plaintiff's PAGA Claim is Proper Because UPS Wage Statements Do Not Violate Section 226(a)**

Plaintiff's representative PAGA action is derivative of her wage statement claim.  *See* Compl.  ¶¶ 80, 82 ("Plaintiff is an "aggrieved employee" as defined by Labor Code § 2699, because she is an employee of Defendant, and one or more of the Labor Code violations was committed against her," and "Plaintiff also alleges Defendants violated California Labor Code Section 226.3 based on the previously alleged violation of Labor Code section 226(a), as described in the fourth cause of action.").

Because UPS's wage statements do not violate section 226(a) as articulated in Section II.B above, they cannot form the valid basis for derivative PAGA penalties.  *See e.g.  In re Taco Bell Wage and Hour Actions*, No. 1:07-cv-0314-SAB, 2016 WL 2755938, at *5 (E.D. Cal. April 8, 2016) (declining to award PAGA penalties where plaintiff failed to prove that a Labor Code violation has occurred), citing Cal. Lab. Code §§ 2699(a), 2699(f)(2); *see also Zackaria v. Wal-*

1   *Mart Stores, Inc.*, 142 F. Supp. 3d 949, 958 (C.D. Cal. 2015) ("PAGA contemplates civil

2   penalties for 'a violation' of the California Labor Code."); *Hibbs-Rines v. Seagate Techs., LLC.*,

3   No. C 08-05430 SI, 2009 WL 513496, at *4 (N.D. Cal. Mar. 2, 2009) ("'An aggrieved employee'

4   may recover civil penalties for *violations* of certain sections of the Labor Code") (emphasis in

5   original); *Plaisted v. Dress Barn, Inc.*, No. 2:12-cv-01679-ODW (SHx), 2012 WL 4356158, at

6   *2 (C.D. Cal. Sept. 20, 2012) ("[E]every PAGA action in some way requires *some* individualized

7   assessment regarding whether a Labor Code violation has occurred.") (emphasis in original).

8   **F.       Summary Judgment as to the Seventh Cause of Action is Proper Because UPS
             Wage Statements Substantially Comply with the Labor Code**

9        Even if the Court were to find some level of non-compliance in the way that UPS

10  expressed the meal period penalty, PAGA penalties would still not apply.  A PAGA action "is

11  fundamentally a law enforcement action designed to protect the public and not to benefit private

12  parties." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).  The primary purpose of

13  assessing civil penalties is thus "to secure obedience to statutes and regulations imposed to assure

14  important public policy objectives." *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 147-48

15  (1991).  Under California law, "substantial compliance with statutory directives will suffice if the

16  purpose of the statute is thereby satisfied." *Downtown Palo Alto Com. for Fair Assessment v.

17  City Council*, 180 Cal. App. 3d 384, 395 (1986).  In this regard, "[t]he paramount consideration is

18  the objective of the statute." *Id.*  "Where there is compliance as to all matters of substance[,]

19  technical deviations are not to be given the stature of *noncompliance*." *Cal-Air Conditioning, Inc.

20  v. Auburn Union School Dist.*, 21 Cal. App. 4th 655, 668 (1993) (emphasis supplied).  Indeed,

21  "[u]nless the intent of a statute can only be served by demanding strict compliance with its terms,

22  substantial compliance is the governing test." *County of Tulare v. Campbell*, 50 Cal. App. 4th

23  847, 853 (1996).  Finally, "[t]he substantial compliance doctrine may apply to statutes whose

24  provisions are mandatory, employing the term 'shall.'" *Eger v. VW Credit, Inc.*, No. Civ.

25  05CV2224LWMC, 2007 WL 433274, at *2 (S.D. Cal., Jan. 29, 2007).

26       In *Hernandez*, the court found that when an employer's wage statements "substantially

27  comply" with Labor Code section 226, no civil penalties will lie.  2012 WL 12272348, at **7-8

28

("to the extent that Defendant's wage statements arguably are not in technical compliance with Section 226(a)(9), the Court concludes that they are in 'substantial compliance.'"), aff'd, 554 F. App'x 661 (9th Cir. 2014). As discussed above, UPS wages statements indicate the total amount of premiums paid and the Preload PTS hourly rate. Accordingly, the specific number of meal premiums is readily apparent utilizing simple division and the wage statement substantially complies with the objective of the statute, which is to ensure that employees are able to determine all of their gross earnings. Summary judgment is proper as to the PAGA claim related to the alleged defective wage statement for this additional reason.

## IV.  SUMMARY JUDGMENT IS PROPER ON PLAINTIFF'S INDIVIDUAL SECOND CAUSE OF ACTION FOR FAILURE TO PROVIDE REST PERIODS

In addition to summary judgment on Plaintiff's and the certified class's wage statement claim, summary judgment is appropriate as to Plaintiff's individual rest break claim.

In denying certification, the Court has already held that "there is no evidence of a uniform or even a pervasive policy of requiring employees to work through rest breaks and not paying rest break premiums." Dkt. No. 115, p. 15. There is also no triable issue of material fact that supports Plaintiff's *individual* rest break claims. Plaintiff alleges that "Defendant failed to authorize and permit rest breaks" and that she was "routinely required to work through rest periods at the direction of Defendant and/or with Defendant's knowledge and acquiescence." Dkt. No. 16, p. 12. Plaintiff further alleges that UPS required that Plaintiff "work through [her] rest periods and/or fail[ed] to relieve [her] of [her] duties for [her] rest periods." Dkt. No. 16, p. 13.

California law requires employers to "authorize and permit all employees to take rest periods, which in so far as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." Specifically, the California Supreme Court has stated that:

> [a]n employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. 5 is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so.

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040-1041 (2012).  Furthermore, "the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay."

Plaintiff testified that she was entitled to rest breaks, that she always took her rest breaks, that she was relieved from all duty for her rest breaks, that no one from UPS impeded her from taking rest breaks, that she was trained and regularly reminded about UPS's rest break policies, and that, as a supervisor, it was her responsibility to make sure that the employees she managed also complied with UPS's lawful rest break policy.  Specifically, Plaintiff testified to the following:

- "Q. And you testified earlier that you're not suing UPS for rest breaks.  So is it correct to assume that no one prevented you from taking a 15-minute rest break during your employment at UPS? A. Yes.  Q. Okay.  And you never worked during your 15-minute rest breaks – A. No." Santos Depo. 152:21-153:4.

- "Q. Okay.  And you were told that you were entitled to take rest breaks, correct? A. Yes." Santos Depo. 91:5-7.

- "Q. Okay.  So the full-time supervisors would text the part-time supervisors the times of the rest and meal breaks? A. Yes." Santos Depo. 111:9-12.

- "Q. And one of your duties as a part-time supervisor was to make sure that your pre-loaders who reported to you complied with UPS policies, right? A. Yes.  Q. And that included meal and rest break policies, right? A. Yes." Santos Depo. 83:22-84:4.

- "Q. Okay.  And during that time, did you also receive copies of the company's meal and rest break and off-the-clock policies? A. It's -- it's a possibility.  Q. Were you at least told about them? A. Yes."); Santos Depo. 90:20-25.

- "Q. And you did get a PCM, every now and then, on meal and rest break compliance, right? A. Sometimes.  Q. And you understand that UPS trains all employees on meal and rest break compliance, right? A. Yes." Santos Depo. 123:8-13.

1  Brown Decl., Ex. A.

2    Because UPS unequivocally authorized and permitted Plaintiff to take her rest breaks,

3  summary judgment is proper on the second cause of action.

4  **V.**  **CONCLUSION**

5    For the foregoing reasons, UPS respectfully requests that the Court grant its Motion for

6  Summary Judgment and enter dismissal with prejudice as to the Second and Fourth Causes of

7  action and dismiss PAGA penalties as to the certified wage statement claim.

8  DATED: March 30, 2021    GBG LLP

9               BY:  /s/ Elizabeth A. Brown

10                  ELIZABETH A. BROWN

11               Attorneys for Defendant

12               UNITED PARCEL SERVICE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28