UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMILIA SANTOS,

            Plaintiff,

    v.

UNITED PARCEL SERVICE INC. (OHIO),

            Defendant.

Case No.  18-cv-03177-EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Docket No. 123

      Plaintiff was a Preload Part-Time Supervisor ("Preload PTS") at United Parcel Service Inc. ("UPS") who brought a putative class action which alleged that UPS violated the California Labor Code and the Private Attorney General Act ("PAGA") through its workplace policies.  The Court granted in part and denied in part Plaintiff's Motion for Class Certification.  Docket No. 115.  It denied all putative subclasses except for the Wage Statement Subclass.  *Id.*  UPS now moves for summary judgment as to that certified subclass.  Docket Nos. 123 and 124.  UPS also moves for summary judgment as to (1) Plaintiff's PAGA claims for wage statement violations (the seventh cause of action), and (2) Plaintiff's individual rest break claims (the second cause of action). Docket No. 124.

## I.      **BACKGROUND**

A.    Procedural History

      The operative complaint alleges seven causes of action: (1) failure to provide meal periods in violation of Labor Code §§ 512, 226.7 and the applicable Wage Orders; (2) failure to provide rest periods in violation of Labor Code § 226.7 and the applicable Wage Orders; (3) failure to provide regular and minimum wages in violation of Labor Code §§ 1197, 1198, and IWC Wage

United States District Court
Northern District of California

1   Order No. 4-2001; (4) failure to furnish timely and accurate wage statements in violation of Labor

2   Code § 226; (5) failure to pay all wages due upon termination in violation of Labor Code §§ 201-

3   203; (6) a UCL claim, Cal. Bus. & Prof. Code § 17200 *et seq.*; and (7) PAGA claims under Labor

4   Code §§ 2698 and 2699, *et seq.*  FAC ¶¶ 31-88.  As a Preload PTS, Plaintiff's duties included

5   supervising preloader employees to make sure they were working safely; helping the preloader

6   employees when needed; training the preloaders; doing paperwork involved with the position;

7   trouble-shooting and fixing machine jams and other issues, when needed; among other duties.  *Id.*

8   ¶ 15.

9            Plaintiff alleged that, during the "peak season," which Plaintiff defines as the two-month

10  period from "Black Friday" to January, UPS would schedule Preload PTS for shifts that lasted

11  longer than six hours and would provide a meal break.  Mot. for Class Certification at 1 (Docket

12  No. 64).  However, during the off-season, when the workflow was less predictable, Preload PTS

13  were scheduled to work part-time shifts but were not provided with meal breaks when their

14  workdays exceeded six hours.  *Id.*  UPS allegedly encouraged Preload PTS to falsify their time

15  records by recording a meal break that was not actually taken.  *Id.* at 2.  Plaintiff also alleged that

16  UPS did not have a system for providing rest break premiums for rest break violations and had

17  wage statements that were not legally compliant.  *Id.* at 2-4.

18           Plaintiff moved to certify the following class and subclasses:

19           "All current and former non-exempt employees of Defendant,
             employed in California, who, during the class period (May 29, 2014
20           to present), worked in a distribution center as a part time preload
             supervisor, or a position with similar duties and/or job titles, and
21           who have not signed an arbitration agreement with Defendant as of
             the date of the filing of this Complaint, and who:
22
23                   a)      Were not paid for all hours worked, in any period that
                     is within the Class Period ("The Unpaid Time Subclass");
24                   and/or

25                   b)      Worked more than 5 hours, or more than six hours if
                     subject to a valid first meal break waiver, and/or worked
26                   more than 10 hours, or more than 12 hours if subject to a
                     valid second meal break waiver, and were not provided with
27                   uninterruptable meal periods of at least 30-minutes ("The
                     Meal Break Subclass"); and/or
28
                     c)      Signed a meal break waiver when they held a

2

United States District Court
Northern District of California

1  different position than that of a Class Member, and did not
   sign a new meal break waiver when they changed the

2  position to one of a Class Member ("The Meal Break Waiver
   Subclass"); and/or

3  d)      Were not provided uninterruptable rest breaks of at
   least 10 minutes for each 4 hours of work ("The Rest Break

4  Subclass"); and/or

5  e)      Were not provided with accurately itemized wage
   statements listing all hours worked and other information

6  required to be listed under California Labor Code § 226(a)
   ("The Wage Statement Subclass"); and/or

7

8  f)      Were not paid all wages due and owing at the time of
   their separation ("The Waiting Time Subclass").

9  *Id.* at 13.

10        The Court granted in part and denied in part Plaintiff's motion for class certification.  In

11  ruling on the Unpaid Time, Meal Break, and Meal Break Waiver Subclasses, the Court noted that,

12  to be certifiable for class treatment, putative class actions under the Labor Code must allege "that

13  a uniform policy consistently applied to a group of employees is in violation of the wage and hour

14  laws."  Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification at 5

15  (Docket No. 115) (citing *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012)).

16  To show such a uniform policy, Plaintiffs could rely on statistical sampling from a qualified expert

17  witness.  *Id.* at 5-6.  But the Court was duty-bound to conduct a preliminary assessment to ensure

18  that it is both reliable and probative of a uniform, companywide policy.  *Id.* at 6 (citing *Duran v.

19  U.S. Bank National Assn.*, 59 Cal. 4th 1, 33 (2014)).  In conducting such a preliminary assessment,

20  the Court found that the statistical sampling from Plaintiff's expert witness (Mr. Berger) showed

21  that UPS had a near-uniform policy of *compliance* with the meal break provisions of the Labor

22  Code.  *Id.* at 7-8.  Therefore, nor reasonable inference of classwide violations could be drawn.

23  The Court thus found that the Unpaid Time, Meal Break, and Meal Break Waiver subclasses were

24  unsuitable for class treatment.

25        In ruling on the Rest Break and Waiting Time Subclasses, the Court found that, because

26  UPS did not require Preload PTS to record their rest breaks, determining the frequency of rest

27  break violations would require an individualized inquiry.  *Id.* at 9-11.  The trier of fact would have

28  to examine individual timecards to determine whether the absence of a rest break was probative of

1    unlawful conduct (*i.e.*, Defendant's failure to authorize and permit rest breaks) or whether there

2    was a lawful explanation (*e.g.*, the employee took the rest break but did not record it, because they

3    were not required to). *Id.* at 11-12. Because questions of fact affecting individual putative class

4    members predominated over questions of fact common to the putative class as a whole, the Court

5    found the Rest Break Subclass unsuitable for class certification, and it further held that the

6    derivative Waiting Time Subclass was also not certifiable. *Id.* at 12-13.

7           The Court certified the following subclass only: all employees who were not provided with

8    accurately itemized wage statements listing all hours worked and other information required to be

9    listed under California Labor Code § 226(a) and Wage Order 9 (*i.e.*, the Wage Statement

10   Subclass). *Id.* at 15-16. The Court found that this subclass was premised on two separate legal

11   theories, only one of which was suitable for class certification. It held that, to the extent this

12   subclass was derivative of Plaintiff's meal and rest break claims, it was unsuitable for class

13   treatment because the data showed that meal breaks were uniformly present on putative class

14   members' timecards and the Labor Code does not require recordation of rest breaks. *Id.* at 14-15.

15   Further, the proof needed for the rest break claims was too individualized because UPS does not

16   require employees to record rest breaks, and the trier of fact would need to scrutinize individual

17   timecards to determine whether the absence of a rest break truly indicated that the employee was

18   not permitted to take a rest break.

19          However, the Court found that Plaintiffs in the putative subclass alleged a second, "more

20   direct" theory for the Wage Statement subclass. *Id.* at 15. Under this second theory, wage

21   statements of Preload PTS are unlawfully ambiguous because meal premium payments are

22   displayed in a lump dollar sum, and the statements do not show the hours or number of premiums

23   paid, and corresponding rate. *Id.* at 14. The Court found this second theory to be suitable for class

24   certification because it can be adjudicated in one fell stroke. UPS's motion for summary judgment

25   challenges this claim on the merits.

26                          **II.      LEGAL STANDARDS**

27   A.    Summary Judgment

28          Rule 56 provides that a "court shall grant summary judgment [to a moving party] if the

United States District Court
Northern District of California

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence "of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, it is not the Court's place to decide between competing inferences; rather, the Court must "view the evidence in the light most favorable to … the non-moving party."  *Samson v. Wells Fargo Bank, N.A.*, 777 F. App'x 881, 883 (9th Cir. 2019).

B.    Labor Code §§ 226(a) and 226.7

Labor Code § 226(a) enumerates the information which employers must list on wage statements.  It provides, in relevant part, as follows:

> "[a]n employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

Cal. Lab. Code § 226(a).  Additionally, the Industrial Welfare Commission ("IWC") has promulgated Wage Order 9, which applies to the transportation industry and requires certain records to be kept:

> "Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately,

5

1    an itemized statement in writing showing: (1) all deductions; (2) the
     inclusive dates of the period for which the employee is paid; (3) the
2    name of the employee or the employee's social security number; and
     (4) the name of the employer, provided all deductions made on
3    written orders of the employee may be aggregated and shown as one
     item."

4    Wage Order 9-2001, 8 C.C.R. 11090, § 7(B).

5        Separately, Labor Code § 226.7 prohibits employers from requiring employees to work

6    during meal and rest breaks.  It provides that "[a]n employer shall not require an employee to work

7    during a meal or rest or recovery period mandated pursuant to an applicable statute" or order of

8    the IWC.  Cal. Lab. Code § 226.7(b).  When an employer fails to provide a meal or a rest period,

9    "the employer shall pay the employee one additional hour of pay at the employee's *regular rate of*

10   *compensation* for each workday that the meal or rest or recovery period is not provided."  Cal.

11   Lab. Code § 226.7(c) (emphasis added).  Interpreting Labor Code § 226.7, the California Supreme

12   Court held:

13           "[n]onpayment of wages is not the gravamen of a section 226.7
             violation. Instead, [the statute] defines a legal violation solely by
14           reference to an employer's obligation to provide meal and rest
             breaks … The "additional hour of pay" provided for in [subdivision
15           (c)] is the legal remedy for a violation of [subdivision (b)], but
             whether or not it has been paid is irrelevant to whether section 226.7
16           was violated. In other words, section 226.7 does not give employers
             a lawful choice between providing either meal and rest breaks or an
17           additional hour of pay. An employer's failure to provide an
             additional hour of pay does not form part of a section 226.7
18           violation, and an employer's provision of an additional hour of pay
             does not excuse a section 226.7 violation. The failure to provide
19           required meal and rest breaks is what triggers a violation of section
             226.7. Accordingly, *a section 226.7 claim is not an action brought*
20           *for nonpayment of wages; it is an action brought for nonprovision of*
             *meal or rest breaks*."

21

22   *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1256-57 (2012) (emphasis added).  But the

23   California Supreme Court has also held that the additional hour of pay in § 226.7(c) is a liability

24   created by statute and that the liability should be characterized as a wage, not a penalty, for

25   purposes of the statute of limitations:

26           "we hold that the Court of Appeal erred in construing section 226.7
             as a penalty and applying a one-year statute of limitations. The
27           statute's plain language, the administrative and legislative history,
             and the compensatory purpose of the remedy compel the conclusion
28           that the *"additional hour of pay" … is a premium wage intended to*

6

*compensate employees, not a penalty.*"

*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007) (emphasis added).

The Court in *Kirby* held that its decision was consistent with *Murphy* because "[t]o say that a section 226.7 remedy is a wage, however, is not to say that the *legal violation* triggering the remedy is nonpayment of wages." *Kirby*, 53 Cal. 4th at 1257 (emphasis in original).  However, neither *Murphy* nor *Kirby* addressed the question of whether Labor Code § 226.7 premium wages are subject to the reporting requirements of Labor Code § 226(a).  Some courts in this district have held that Labor Code § 226.7 premium wages are subject to the provisions of Labor Code § 226(a) (or have implied that these wages could be subject to its provisions).  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, No. C-13-02377 JSC, 2014 U.S. Dist. LEXIS 13212, at *25 (N.D. Cal. Feb. 3, 2014) (stating that, because *Murphy* held that an "employee is entitled to the additional hour of pay [under § 226.7(c)] 'immediately' upon being forced to miss a rest or meal period," it would appear inconsistent "to conclude that an employee is not also immediately entitled to have the additional hour of pay documented on their wage statements"); *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2015 U.S. Dist. LEXIS 114860, at *57-58 (N.D. Cal. Aug. 27, 2015) (holding that "the premium payments due under section 226.7 are to be considered 'wages' for purposes of sections 203 and 226").  *But see Naranjo v. Spectrum Sec. Servs.*, Inc., 40 Cal. App. 5th 444, 474 (2019) (holding that "section 226.7 actions do not entitle employees to pursue the derivative penalties in [Labor Code] section[] … 226").

As discussed *infra*, the Court need not resolve this question in ruling on the Motion for Summary Judgment.  Even if the Court assumes that Labor Code § 226.7 premium wages must be reported on wage statements, it finds that UPS has complied with Labor Code § 226(a) by listing meal premium payments as one lump sum payment.

C.    Labor Code § 226(e)

An employee who suffers a "knowing and intentional failure by an employer to comply with [§ 226(a)]" is entitled to monetary damages.  Cal. Lab. Code § 226(e).  But the employee must show that they have suffered an injury, and

"[a]n employee is deemed to suffer injury … if the employer fails to

7

1    provide accurate and complete information as required by any one
     or more of items (1) to (9), inclusive, of subdivision (a) and the
2    employee *cannot promptly and easily determine from the wage
     statement alone* one or more of the following:

3    (i) The amount of the gross wages or net wages paid to the employee
     during the pay period or any of the other information required to be
4    provided on the itemized wage statement pursuant to items (2) to
     (4), inclusive, (6), and (9) of subdivision (a).

5
     (ii) Which deductions the employer made from gross wages to
6    determine the net wages paid to the employee during the pay period
     …"
7

8    Cal. Lab. Code § 226(e)(2)(B) (emphasis added).  The statute defines "promptly and easily

9    determine" to mean that "a *reasonable person* would be able to readily ascertain the information

10   *without reference to other documents or information*."  Cal. Lab. Code § 226(e)(2)(C) (emphases

11   added).

12                             **III.        DISCUSSION**

13   A.      UPS Wage Statements

14           The Court first analyzes whether UPS's wage statements comply with the Labor Code and

15   the applicable Wage Order.  The UPS wage statement is shown below:

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              8

United States District Court
Northern District of California

Return to Paycheck List

MOVING OUR WORLD FORWARD BY DELIVERING WHAT MATTERS

| Employee Name | | Work Location | | Advice No. |
|---|---|---|---|---|
| - EMILIA L SANTOS | | 0386 CASNR 920 9616 P ZZZ 0 | | 0386013041 |

| Employee ID | Tax ID | Fed Status | St Wrk | St Res Status | Advice Date |
|---|---|---|---|---|---|
| - 5077277 | XXX-XX-5121 | S 00 | S 00 | | 12/14/2017 |

| Earnings Statement | Period Begin | Period End | Total Earned | Total Taxes | Total Deducted | Net Amount |
|---|---|---|---|---|---|---|
| - | 12/03/2017 | 12/09/2017 | 1,359.00 | 399.79 | 106.26 | 852.95 |

| Earnings | | | | | Taxes - Deductions - Misc | | |
|---|---|---|---|---|---|---|---|
| Description | Rate | Miles | Hours | Gross | Description | Current | YTD |
| - | CURRENT PAY RATE | | 18.00 | | TAXES | | |
| - REGULAR | 18.000 | | 40.00 | 720.00 | FICA | 82.73 | 1,143.08 |
| - OVERTIME | 27.000 | | 23.00 | 621.00 | FICA MEDICARE | 19.34 | 267.33 |
| - CAL MEAL | | | | 18.00 | FEDERAL TAX | 220.18 | 2,177.32 |
| - TOTAL HOURS WORKED | | | 63.00 | | ST TAX- CA | 65.53 | 373.57 |
| - CURRENT TOTALS | | | | 1,359.00 | STATE DISAB | 12.01 | 165.93 |
| - Y-T-D TOTALS | | | 1,128.27 | 18,800.01 | TOTALS | 399.79 | |
| - | | | | | DEDUCTIONS | | |
| - | | | | | BFTAX FLEX | 24.72 | 370.80 |
| - | | | | | 401K DED 6 | 81.54 | 362.89 |
| - | | | | | TOTALS | 106.26 | |
| - VAC 0.00 | D OPD 0.00 | D OPW 0.00 | H OTH 0.00 | D PST 11.00 | H | | |

Employee Address

P.O. BOX 15
SUNOL ,CA ,94586

UNITED PARCEL SERVICE, INC.
55 GLENLAKE PARKWAY NE
ATLANTA , GA 30328

Waters Decl. (Docket No. 126). UPS contends that this wage statement contains every element which is required by Labor Code § 226(a) and Wage Order 9 (*i.e.*, gross wages earned, total hours worked by the employee, all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, the name of the employee and the last four digits of their social security number, the employer's name and address, and all applicable hourly rates in effect during the pay period along with the corresponding number of hours worked at each hourly rate by the employee). MSJ at 10-12. Preload PTS do not receive piece rate compensation, and thus Labor Code § 226(a)(3) does not apply. *Id.* at 11 n.5.

The entry for meal premium payments is listed as "Cal Meal" in the wage statement. Plaintiffs note that the "rates" and "hours" columns next to the Cal Meal entry are empty. Opp. to MSJ at 4-5. There are entries in the rates and hours columns for regular and overtime pay, but the meal premium payment is listed as one lump sum amount. *Id.* at 5. According to Plaintiffs, the

9

wage statement does not set forth the number of meal premiums that are being paid for, nor the formula for calculating total meal premiums due.  *Id.*  Thus, Plaintiffs argue that the lump sum entry is a violation of Labor Code § 226, because the objective standard asks whether "a reasonable person would be able to readily ascertain the information without reference to other documents or information," and employees cannot calculate the number of meal premium payments they received during a particular pay period from the four corners of the wage statement.  *See* Cal. Lab. Code § 226(e)(2)(C).  UPS counters that it is not required, by caselaw or statute, to provide the formula for computing meal premium payments on its wage statements.  Reply at 5.

At the motion hearing, counsel for UPS explained that a meal premium payment may be earned by an employee if their meal break is taken "late," or if their meal break is cut short. Counsel was referring to Labor Code § 512, which provides, in relevant part, that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  Cal. Lab. Code § 512(a).  When an employee works longer than five hours and receives a lunch break that is less than 30 minutes long, their meal period is not in accordance with Labor Code § 512, and they must be compensated with a meal premium payment.  *See* Cal. Lab. Code § 226.7(c) ("[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law … the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation").

This fact underscores why payments under § 226.7 for violation of meal break laws such as § 512 may fairly be characterized, in the context of § 226(a) reporting requirements, as based not on an action brought for nonpayment of wages, but on an action brought for the non-provision of meal or rest breaks in accordance with the Labor Code.  *Kirby*, 53 Cal. 4th at 1256-57.  *Cf. Brewer v. Premier Golf Props., LP*, 168 Cal. App. 4th 1243, 1253-54 (2008) (noting that "the regulations requiring employers to provide meal breaks (§ 512) and rest breaks" have provided numerous forms of remedies for their violation, which include "an award in the nature of liquidated damages under section 226.7").

However, the Court need not definitively resolve the question of whether these payments

10

are wages or penalties to rule on the motion at bar.  Even if the Court assumes that meal premium payments under Labor Code § 226.7 must be reported as "wages" pursuant to Labor Code § 226(a), UPS has complied with § 226(a) by listing the meal premium entry as one lump sum payment.  The purpose of Labor Code § 226(a) is to promote transparency and to provide employees with the essential information needed to verify that they are being paid for all hours worked.  *See Morgan v. United Retail Inc.*, 186 Cal. App. 4th 1136, 1149 (2010) ("[t]he purpose of the wage statement requirement is to provide transparency as to the calculation of wages … [and] [a] complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law") (quoting DLSE Opn. Letter No. 2006.07.06 (July 6, 2006) p. 2).  Adding numbers to the "rate" and "hours" columns for Cal Meal payments would not promote transparency and would only serve to confuse employees.  The "hours" column is a misnomer for § 226.7 purposes.  Unless an employee knew that meal premium payments under Labor Code § 226.7 are paid at the employee's regular rate of compensation, they might interpret the "hours" figure next to Cal Meal in several different ways.  If the employee was paid the equivalent of "one" hour in the Cal Meal column, that employee might believe they missed a single half-hour meal break, or they might just as plausibly believe that they missed an hour's worth of meal breaks (*i.e.*, two half-hour meal breaks).  The proper measurement for one "hour" in this context would not be found within the four corners of the wage statement.  Instead, in order to eliminate all ambiguities, the employer would have to print the formula prescribed in Labor Code § 226.7 on the wage statement.  Plaintiffs cite no provision of the Labor Code which imposes such a requirement.

The Ninth Circuit's recent decision in *Magadia* supports the Court's holding.  In *Magadia*, the Ninth Circuit held that Walmart did not violate Labor Code § 226(a)(9) by failing to list the "hourly rate" and "hours worked" for retroactive overtime pay.  *Magadia v. Wal-Mart Assocs.*, No. 19-16184, 2021 U.S. App. LEXIS 16070, at *23-24 (9th Cir. May 28, 2021).  It found that the retroactive overtime payments at issue were "after-the-fact adjustment[s] to compensation based on the overtime hours worked and the average of overtime rates over a quarter (or six pay periods)."  *Id.* at *25.  Plaintiffs' reading of the statute would lead "to the anomalous result of

1   having a wage statement listing an 'hourly rate' but with zero 'number of hours worked' at that

2   rate." *Id.* at \*27.  Similarly, as in *Magadia*, the payments here are an after-the-fact adjustment to

3   compensation based on the number of meal periods missed in a particular pay period.  Listing the

4   "hourly rate" and "hours worked" for a meal premium penalty would thus confuse employees.

5   This information would not advance "employees' concrete interest in receiving accurate

6   information about their wages in their pay statements."  *Id.* at \*21.

7        The Court finds that UPS's wage statements provide sufficient information to comply with

8   Labor Code § 226(a).  The wage statement discloses if the worker received a meal period premium

9   and, if so, how much.  If the worker wants a breakdown, the statements provide a "current pay

10   rate" and a gross, lump sum figure for meal premium payments.  *See* Waters Decl. (Docket No.

11   126).  An employee can divide the lump sum amount, listed next to Cal Meal, by their current pay

12   rate to arrive at the number of hours of meal premium payments they are receiving for a particular

13   pay period.  An employee can ascertain necessary information (the number of hours credited for

14   meal period premium) by "performing simple math, using figures on the face of the wage

15   statement."  *Hernandez v. BCI Coca-Cola Bottling Co.*, 554 F. App'x 661, 662 (9th Cir. 2014).[1]

16        In sum, the Court finds that UPS's wage statements comply with Labor Code § 226(a).

17   The Court therefore **GRANTS** UPS's Motion for Summary Judgment as to the wage statement

18   claims under Labor Code § 226(a) and Wage Order 9 for the Wage Statement Subclass.

19

20

---

21   [1] *Hernandez* is an unpublished Ninth Circuit opinion and not binding.  But the Court finds
22   *Hernandez* to be persuasive authority because it provides a common-sense simple math standard.
     Other courts have also held that a violation of Labor Code § 226(a) does not result when the
     Plaintiff possesses all information needed to perform the simple math that will lead to the desired
23   information.  *See, e.g.*, *Magadia v. Wal-Mart Assocs.*, 319 F. Supp. 3d 1180, 1190 (N.D. Cal.
     2018) ("a wage statement does not violate § 226(a) if a plaintiff employee can ascertain the
24   required information by performing simple math, using figures on the face of the wage statement")
     (internal quotation omitted), *rev'd on other grounds*, 2021 U.S. App. LEXIS 16070; *Reinhardt v.
25   Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) ("if a claimed injury is based
     merely upon the plaintiff having to perform 'simple math' with the information already in his
26   possession, then there is no cognizable injury"); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136,
     1143 (2011) (finding that Plaintiff had failed to allege an injury because the wage statement
27   provided the information needed to perform simple math, and Plaintiff's complaint was
     distinguishable from cases presenting "*inaccurate or incomplete* wage statements, which required
28   those plaintiffs to engage in discovery and mathematical computations to reconstruct time records
     to determine if they were correctly paid") (emphasis added).

United States District Court
Northern District of California

B.      Plaintiff's Individual Rest Break Claim

That leaves named Plaintiff's individual rest break claim.  The IWC has issued an order on

rest breaks, providing, in relevant part:

> "Every employer shall authorize and permit all employees to take
> rest periods, which insofar as practicable shall be in the middle of
> each work period. The authorized rest period time shall be based on
> the total hours worked daily at the rate of ten (10) minutes net rest
> time per four (4) hours or major fraction thereof. However, a rest
> period need not be authorized for employees whose total daily work
> time is less than three and one-half (3 1/2) hours. *Authorized rest
> period time shall be counted as hours worked for which there shall
> be no deduction from wages.*"

Wage Order 4-2001, 8 C.C.R. 11040, § 12(A) (emphasis added).  While rest breaks are paid, meal

breaks are generally unpaid, unless the employee is not relieved of all her duties during that 30-

minute meal period, in which case she is entitled to compensation for time worked during the meal

period.  *See* Wage Order 5-2001, 8 C.C.R. 11050, § 11(A).

Plaintiff argues that she did not receive an explanation of UPS's rest break policy as a

Preload PTS, and that she was advised to change her 15-minute rest break to a 30-minute meal

break on the timecard, which puts into question whether she was provided with a rest break in the

first place.  Opp. to MSJ at 23-24.

The deposition testimony shows that Plaintiff was instructed to change a 15-minute rest

break to a 30-minute meal break on her timecard:

> "A I had trouble with putting in 15-minute breaks, and somebody
> telling me to put a 30-minute break when I wasn't getting a 30-
> minute break. And the part-time supervisor -- you know, me and
> somebody else questioned it amongst ourselves. But we -- we kind
> of just went with it, unfortunately.
>
> Q Okay. I want to make sure I understand what's going on here. So
> you testified that Kent Hermanson told you to change a 15-minute
> rest break to a 30-minute meal period; is that right?
>
> A Yes, yes.
>
> Q Okay. Did anyone else at UPS tell you to change your time card?
> …
> THE WITNESS: He was -- he was the only one.
>
> BY MS. SVANFELDT:
> Q How many times did Kent Hermanson tell you to change a 15-
> minute break to a 30-minute break? Was it just once?

United States District Court
Northern District of California

1    A Maybe twice. Once or twice.

2  Realin Decl., Ex. 1 (Santos Dep. Tr. at 115:17-116:4) (Docket No. 127-1).  Plaintiff's deposition

3  testimony creates a triable issue of fact as to whether she suffered injury.  Unlike meal breaks, rest

4  breaks are automatically "counted as hours worked for which there shall be no deduction from

5  wages."  Wage Order 4-2001, 8 C.C.R. 11040, § 12(A).  There is a genuine dispute of material

6  fact as to whether Plaintiff suffered a deduction in wages when her supervisor instructed her to

7  change a 15-minute rest break (for which she was owed compensation) to a 30-minute unpaid

8  meal break on her timecard.  If Plaintiff was instructed to make this change, she suffered injury

9  because she was prevented from receiving wages for the rest breaks she took as a Preload PTS.

10    Accordingly, the Court **DENIES** UPS's Motion for Summary Judgment as to Plaintiff's

11  individual rest break claim.

**IV.**    **CONCLUSION**

13    For the foregoing reasons, the Court **GRANTS** the Motion for Summary Judgment as to

14  the fourth cause of action and the wage statement subclass.  Because there is no genuine dispute of

15  material fact as to whether UPS's wage statements comply with the Labor Code, the Court

16  **GRANTS** the partial Motion for Summary Judgment on Plaintiff's claim for PAGA penalties as it

17  relates to the wage statements.  However, the Court **DENIES** the Motion for Summary Judgment

18  as to the second cause of action on named Plaintiff's individual rest break claim.

19    This order disposes of Docket No. 123.

20

21    **IT IS SO ORDERED**.

22

23  Dated: June 7, 2021

24

25  _____

26  EDWARD M. CHEN
   United States District Judge

27

28

14

United States District Court
Northern District of California