1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    EMILIA SANTOS,                              Case No. 18-cv-03177-EMC

8                  Plaintiff,                    **REDACTED/PUBLIC VERSION**

9          v.                                    **ORDER GRANTING PARTIES'
                                                 JOINT STIPULATION FOR
10   UNITED PARCEL SERVICE INC. (OHIO),          APPROVAL OF PAGA SETTLEMENT**

11                 Defendant.                    Docket No. 145

12

13

14                        **I.      INTRODUCTION**

15         Plaintiff Emilia Santos (Plaintiff) was a Preload Part-Time Supervisor ("Preload PTS") and

16   filed this putative class action lawsuit against her former employer, Defendant United Parcel

17   Service, Inc. ("Defendant" or "UPS"), for wage and labor violations arising out of Defendant's

18   failure to pay wages for all time worked and failure to provide timely and uninterrupted meal and

19   rest periods.  FAC ¶ 1; Docket No. 16.  The parties indicate that they have agreed to resolve

20   Plaintiff's remaining PAGA claims through monetary penalties.  Memorandum on Joint

21   Stipulation ("Memo") at 1; Docket No. 145.  Currently pending before the Court is a Joint

22   Stipulated Settlement for Plaintiff's remaining PAGA claims in this case.  Exhibit 1 at 11; Docket

23   No. 145-1.

24                        **II.     BACKGROUND**

25         On May 29, 2018, Plaintiff filed a class action complaint on behalf of herself and those

26   similarly situated claiming:  (1) failure to provide meal periods in violation of California Labor

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Code §§ 512 and 226.7;[1] (2) failure to provide rest breaks in violation of Labor Code § 226.7; (3)

2    failure to pay regular and minimum wages in violation of §§ 1197 and 1198; (4) inaccurate wage

3    statements in Violation of Labor Code § 226; (5) waiting time penalties pursuant to Labor Code §

4    203; and (6) unlawful business practices in violation of Business & Professions Code § 17200 *et*

5    *seq*. Complaint; Docket 1. On May 24, 2018, Plaintiff also sent a certified notice to the California

6    Labor and Workforce Development Agency ("LWDA") alleging the same claims, to comply with

7    the PAGA pre-filing requirements. FAC ¶ 21. On July 30, 2018, Plaintiff filed the First Amended

8    Complaint adding a seventh cause of action for PAGA violations based on the six prior causes of

9    actions. Notably, in her First Amended Complaint, Plaintiff alleges that Defendant violates

10   California Labor Code § 512(a) by assigning six-hour shifts and failing to provide timely and off-

11   duty meal periods of 30 minutes, and by instructing Preload PTS to clock out for a meal break

12   between the fourth and fifth hour of the workday without actually taking that meal break. FAC ¶

13   16. Plaintiff also alleges that Defendant systematically forced Preload PTS to miss one or more

14   rest breaks, without being paid rest break premiums for each workday the rest break was not

15   provided. FAC ¶ 17. Additionally, Plaintiff alleges that this practice (of not paying rest break

16   premiums) occurred five times per week, with the consent of UPS managers and supervisors. *Id.*

17         On August 14, 2020, after class discovery, Plaintiff brought her motion for class

18   certification. Pl.'s Motion to Certify the Class; Docket No. 64. On November 18, 2020, the Court

19   granted in part and denied in part Plaintiff's Motion for Class Certification. Docket No. 115. The

20   Court denied all putative subclasses except for the Wage Statement Subclass. *Id.* On March 30,

21   2021, Defendant filed a motion for summary judgment of Plaintiff's certified wage statement

22   claim (and related PAGA cause of action), and Plaintiff's individual rest break claim. Docket No.

23   123. On June 7, 2021, the Court granted Defendant's motion in part, granting summary judgment

24   for the certified wage statement claim (as well as the related PAGA claim) and denied summary

25   judgment as to Plaintiff's individual rest break claim. Docket No. 133.

26         On June 17, 2021, Plaintiff filed a motion to determine finality of the Court's partial

27

28
_____

[1] Future statutory references are to the California Labor Code unless otherwise indicated.

1   summary judgment order under Rule 54(b), or, in the alternative, to certify the order for

2   interlocutory appeal.  Docket No. 137.  Following a hearing, on July 30, 2021, the Court denied

3   Plaintiff's motion.  Docket No. 144.

4           Only five of Plaintiff's individual claims (failure to provide rest breaks, failure to provide

5   meal breaks, failure to pay regular and minimum wages, waiting time penalties, and UCL

6   violations) and her corresponding PAGA claims remain.  Notably, Plaintiff's counsel states in a

7   declaration that Plaintiff Santos and eight additional current and former employees of Defendant

8   UPS have reached individual settlements of their claims against UPS.  Decl. ¶ 14, Docket No.

9   145-1.  On November 2, 2021, the Court requested that Plaintiff file under seal the financial terms

10  of her individual settlement with Defendant.  Docket No. 146.  ████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ██   The parties now request that the Court approve the stipulated PAGA Settlement Agreement

15  and dismiss with prejudice Plaintiff's seventh cause of action for PAGA penalties.  Memo at 16,

16  Docket No. 145.  Additionally, since Plaintiff settled her individual claims with Defendant,

17  Plaintiff's Counsel states that Plaintiff's "individual claims will also be dismissed with prejudice

18  upon approval of the PAGA settlement."  *Id*.

19          **III.      SUMMARY OF THE STIPULATED PAGA SETTLEMENT**

20  A.     PAGA Group Members

21          The PAGA Settlement defines "Aggrieved Employees" as all persons who were employed

22  by Defendant as a Part-Time Supervisor in California at any time from May 29, 2017 through the

23  date of the order approving the Settlement who are not otherwise covered by the Second Amended

24  Stipulation of Class Action Settlement reached in the *Mauricio Navarro v. United Parcel Service,*

25  *Inc*. matter, Los Angeles County Superior Court Case No. BC592098, which contains a release of

26  PAGA claims.  Settlement Agreement, ¶ 1, attached as Exhibit 1 to Markham Decl.; Docket No.

27  145-1.  The PAGA Settlement notes that as of August 18, 2021, there were 1,703 Part Time

28  Supervisors in California who are not covered by the PAGA settlement and release in the *Navarro*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    matter. *Id*. The parties specify in their joint response to the Court's request for additional

2    information that "[b]etween May 29, 2017 and August 18, 2021, there were 1,703 aggrieved

3    employees" and note that Defendant "is in the process of gathering information regarding

4    additional potential aggrieved employees who may have been hired since August 18, 2021." Joint

5    Response at 2; Docket No. 149.

6    B.    Settlement Payment and Plan of Allocation

7        Additionally, Defendant UPS will pay a total of nine thousand dollars ($9,000) to

8    Aggrieved Employees and the LWDA ("PAGA Penalties Fund") in full satisfaction of all claims

9    for PAGA civil penalties under the Labor Code, Wage Orders, regulations, and/or other provisions

10    of law alleged or that could have been alleged to have been violated based on the facts alleged in

11    the FAC with respect to Aggrieved Employees during the Settlement Period. Settlement

12    Agreement, ¶ 13. Pursuant to PAGA, Seventy Five Percent of this amount ($6,750) will be paid to

13    the LWDA, and the remaining Twenty-Five Percent ($2,250) will be paid to the Aggrieved

14    Employees. *Id.* The PAGA Settlement states the following formula for calculating each

15    Aggrieved Employee's payment: "Settlement Payment = 2,250.00 x [Weeks Worked by

16    Individual Aggrieved Employee During the Settlement Period ÷ Total Weeks Worked by All

17    Aggrieved Employees during Settlement Period]." *Id*. ¶ 13(b). Additionally, based on the

18    "information available to Defendant to date, the approximate average amount allocated to each

19    Aggrieved Employee would be $1.50." Joint Response at 2-3. The PAGA Settlement does not

20    provide for release of underlying wage claims.

21        Within thirty (30) calendar days of the Effective Date (defined in paragraph 20 of the

22    PAGA Settlement Agreement as the date the Court enters an Order and Judgment pursuant to the

23    Joint Stipulation), Defendant will transmit to the third-party Administrator the following

24    information for the Aggrieved Employees: home address, home telephone number, social security

25    numbers, work week counts. Settlement Agreement, ¶ 15. Within twenty-one (21) calendar days

26    after transmission of the data to the third-party Administrator, the third-party Administrator, will

27    mail checks to each Aggrieved Employee for his or her share of the settlement along with an

28    explanatory letter which will be mutually approved by the parties, and a check to the LWDA for

4

1    its share of the General PAGA Penalties Fund.  *Id.* ¶ 16.  Any checks returned as non-deliverable

2    on or before the check cashing deadline will be sent promptly via regular First-Class U.S. Mail to

3    the forwarding address obtained by the administrator.  *Id*.  Checks will remain negotiable for 180

4    days.  *Id*.  Funds represented by settlement checks returned as undeliverable and those settlement

5    checks remaining uncashed for more than 180 days after issuance will be tendered to Controller of

6    the State of California to be held pursuant to the Unclaimed Property Law (*see* Cal. Civ. Code §

7    1500, *et seq*.) for the benefit of those Aggrieved Employees who did not cash their checks.  *Id.*

8            The PAGA Settlement also notes that, "[i]n negotiating this Settlement, Plaintiff has taken

9    into account the uncertainty and risk of the outcome of further litigation, including the uncertainty

10   and risk of success on her PAGA claims following denial of Plaintiff's motion for class

11   certification on similar claims, and granting of Defendant's motion for summary judgment on the

12   certified wage statement claim and the derivative PAGA claim."  *Id*. ¶ 9.  Additionally, it notes

13   that Plaintiff also considered the expense and length of the proceedings necessary to litigate the

14   claims, both generally and in response to Defendant's defenses and that Defendant denies any

15   wrongdoing.  *Id.* ¶¶ 9-10.  Further, the PAGA Settlement states that Plaintiff has determined that it

16   is fair and promotes PAGA's objectives and that reaching this settlement now has the potential to

17   have a higher value today than it might have later if this litigation were to continue.  *Id. ¶* 9.

18           As for Administration Fees, the PAGA Settlement provides that Defendant will pay the

19   Administrator's costs and fees of issuing and mailing Settlement Payments to Aggrieved

20   Employees and the LWDA, as specified in the Settlement.  *Id*. ¶ 17.  As for Aggrieved

21   Employee's Counsel's fees, the PAGA Settlement states that "The Markman Law Firm on behalf

22   of all Aggrieved Employees' Counsel acknowledges that no fees, costs, or expenses are due to

23   them in connection with this Action, with the exception of individual Confidential Settlement

24   Agreements and Releases of Claims between UPS and Plaintiff Santos" and the eight other

25   individual plaintiffs, "which provide for attorneys' fees and costs."  *Id*. ¶ 18.

26   C.      Settlement Release

27           The PAGA Settlement defines Released Claims as "all claims against the Released Parties

28   for recovery of civil penalties under PAGA, whether known or unknown, to recover wages,

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    damages, penalties, attorneys' fees, litigation costs, restitution, or equitable relief, which Plaintiff

2    and/or the Aggrieved Employees had, or may claim to have, that were alleged or could have been

3    alleged in Plaintiff's May 24, 2018 letter to the LWDA and the Seventh Cause of Action in the

4    FAC." *Id*. ¶ 19.  The PAGA Settlement also notes that upon entry of the Court's Order and

5    Judgment, the LWDA and Plaintiff and the Aggrieved Employees fully release and forever

6    discharge the Released Parties (Defendant UPS) from any and all Released Claims during the

7    Settlement Period, as those terms are defined in the Settlement Agreement.  *Id*. ¶ 19.  Notably,

8    "Aggrieved Employees will not be deemed to have released any individual wage and hour claims

9    by virtue of this Settlement Agreement." *Id*.

10    **IV.    LEGAL STANDARD**

11    A.    PAGA Settlement Approval

12    "An employee bringing a PAGA action does so as the proxy or agent of the state's labor

13    law enforcement agencies, ... who are the real parties in interest."  *Sakkab v. Luxottica Retail N.*

14    *Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted).  Thus, "[a]n action

15    brought under the PAGA is a type of qui tam action."  *Id.* at 429.  Because a settlement of PAGA

16    claims compromises a claim that could otherwise be brought by the state, the PAGA provides that

17    "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]."

18    Cal. Labor Code § 2699(1)(2).

19    A party seeking approval of a PAGA settlement must simultaneously submit the proposed

20    settlement to the California Labor and Workforce Development Agency (LWDA) to allow the

21    LWDA to comment on the settlement if the LWDA so desires.  The PAGA also states that courts

22    may exercise their discretion to lower the amount of civil penalties awarded "if, based on the facts

23    and circumstances of the particular case, to do otherwise would result in an award that is unjust,

24    arbitrary and oppressive, or confiscatory."  Cal. Labor Code § 2699(e)(2).  Because state law

25    enforcement agencies are the "real parties in interest" for PAGA claims, the Court's task in

26    reviewing the settlement is to ensure that the state's interest in enforcing the law is upheld.

27    *Sakkab*, 803 F.3d at 435.

28    Other than the provisions discussed above, however, the PAGA does not establish a

1    standard for evaluating PAGA settlements.  Indeed, the LWDA has stated that "[t]he LWDA is not

2    aware of any existing case law establishing a specific benchmark for PAGA settlements, either on

3    their own terms or in relation to the recovery on other claims in the action."  LWDA Response at

4    3, *O'Connor v. Uber Technologies*, 201 F. Supp. 3d 1110, Docket No. 736 (N.D. Cal. July 29,

5    2016).

6          Some courts approve PAGA settlements only if "(1) the statutory requirements set forth by

7    PAGA have been satisfied, and (2) the settlement agreement is fair, reasonable, and adequate in

8    view of PAGA's public policy goals."  *See Basiliali v. Allegiant Air, LLC*, 2019 WL 8107885, at

9    *3 (C.D. Cal. July 1, 2019) (citations omitted).

10         Animated by those principles, this Court has previously analyzed the following purposes of

11   the statute and factors when assessing whether to approve a PAGA settlement:

> (1) Protecting workers and law-abiding employers by ensuring
>      compliance with the State's labor standards and deterring future
>      Labor Code violations;
> (2) Collecting civil penalties to augment the State's labor
> enforcement capabilities and educating workers;
> (3) The settlement has a rational basis in view of the strength and
> full value of the PAGA claims; and
> (4) The settlement is neither collusive nor unfair to those affected.

17   *O'Connor*, 201 F. Supp. 3d at 1132–35.

18                              **V.   DISCUSSION**

19   A.    Deterring Future Labor Code Violations & Collecting Penalties to Augment LWDA

20         Plaintiff claims that the PAGA penalties secured by the Settlement here serve PAGA's

21   purposes and support approval of the settlement.  Memo at 10.

22         "Unlike a class action seeking damages or injunctive relief for injured employees, the

23   purpose of PAGA is to incentivize private parties to recover civil penalties for the government that

24   otherwise may not have been assessed and collected by over burdened state enforcement

25   agencies."  *McKenzie v. Federal Express Corp.*, 765 F. Supp. 2d 1222, 1233 (C.D. Cal. 2011).

26   For Labor Code violations for which no penalty is provided, PAGA provides that the penalties are

27   generally $100 for each aggrieved employee per pay period for the initial violation and $200 per

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    pay period for each subsequent violation.[2]  Cal. Lab. Code § 2699(f)(2).  For a plaintiff to recover

2    for a "subsequent violation," an employer must have notice that it has violated the Labor Code.

3    *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1207-09 (2008); *see also Trang v. Turbine*

4    *Engine Components Technologies Corp.*, 2012 WL 6618854, at \*5 (C.D. Cal. Dec. 19, 2012)

5    ("courts have held that employers are not subject to heightened penalties for subsequent violations

6    unless and until a court or commissioner notifies the employer that it is in violation of the Labor

7    Code").  Additionally, seventy-five percent of the civil penalties are distributed to the LWDA, and

8    the remainder is distributed to the aggrieved employee(s) who initiated the claim. Cal. Lab. Code,

9    § 2699(i).

10        Plaintiff states that "UPS was not cited for any violations, and therefore, no more than [a]

11    $100 penalty for every pay period applies."  Memo at 12.  Plaintiff also notes that the LWDA has

12    been on notice of Plaintiff's claims for over three years and has received the settlement and did not

13    object to it.  *Id.*  Further, Plaintiff states that the LWDA never notified Plaintiff that it intended to

14    investigate the PAGA claims and that the parties have no reason to believe that the recent

15    settlement notification "will prompt the LWDA to investigate or otherwise intervene in the

16    settlement of the PAGA claims in this case."  *Id*. at 13.  As such, Plaintiff argues that the LWDA's

17    inaction "is persuasive evidence that the PAGA settlement in this case augments the state's

18    enforcement capabilities, encourages compliance with Labor Code provisions, and deters

19    noncompliance with California's labor law."  *Id.*

20        The Court had concerns that Plaintiff's PAGA claims were being used as a bargaining chip

21    to enhance Plaintiff's individual settlement with Defendant given the meager PAGA Settlement in

22    comparison to Plaintiff's individual settlement.  *O'Connor*, 201 F. Supp. 3d at 1134 ("there may

23    be a temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip,

24    wherein the rights of . . . the public may be waived for little additional consideration in order to

25    induce the employer to agree to a settlement . . . .").  However, the Stipulated PAGA Settlement

26

27    ──────────────────
[2] Labor Code Section 558, which also provides for civil penalties that can apply in the PAGA
28    context, provides for penalties of $50 per pay period for the initial violation and $100 per pay
period for each subsequent violation.

1   explicitly states that in the event that:

2         (i) the Court does not approve the Settlement as provided herein, or
3   the approval is stayed or substantially delayed; or (ii) the Settlement
      does not become final for any other reason, then this Settlement
4   Agreement, and any documents generated to bring it into effect, will
      be null and void, and the Parties will be returned to their original
5   respective positions.  However, *this shall have no effect on the*
*Confidential Settlement Agreement and Release of Claims between*
6   *Plaintiff and the Defendant*, resolving Plaintiff's individual claims
      for consideration, and in the event (i) or (ii) as listed above occur,
7   Plaintiff will dismiss the remaining PAGA claims without prejudice,
      for consideration as provided in her individual agreement, and the
8   release set forth in Section 18 shall not become effective.

9   Settlement ¶ 23 (Emphasis added).  ███████████████████████

10  ████████████████████████████████████████████████████

11  ██████████████████████████████████████████████ Section 23 of

12  the PAGA Settlement makes clear that Plaintiff's individual settlement with Defendant is *not*

13  contingent on the approval of the PAGA Settlement; this delinkage alleviates the Court's concern

14  that the PAGA claims are being used as a bargaining chip for the Plaintiff's individual settlement.

15  Additionally, the Settlement only releases PAGA claims through the date of settlement approval.

16  Settlement ¶ 19.  Thus, any subsequent PAGA violation could subject Defendant UPS to an

17  entirely new PAGA claim for additional civil penalties.  Moreover, as noted above, the PAGA

18  Settlement does not release any individual wage and hour claims, which can be brought

19  individually by aggrieved employees against Defendant.  *See id*.  As such, the Court can

20  reasonably find that the gross penalty amount provided by this Settlement–although modest in

21  comparison to the maximum potential liability–is rational given the circumstances of the case.

22  Additionally, the PAGA Settlement does enhance the State's labor enforcement and education

23  capabilities, albeit only marginally so.

24  B.      Rational Basis in Light of the Full Value of the PAGA Claims

25        Plaintiff states that the parties negotiated a good faith amount.  Memo at 12.  Plaintiff

26  specifically argues that the PAGA Settlement is adequate and is consistent with similar PAGA

27  settlement amounts approved by other California district courts.  *Id.* at 13.  Plaintiff explains that

28  the "maximum potential liability of UPS for PAGA penalties is $7,823,400 (approximately 78,234

United States District Court
Northern District of California

1    pay periods times $100, which assumes a violation in every pay period)." *Id.* at 14. Plaintiff

2    emphasizes that this recovery is theoretical and that she has lost class certification on (ultimately)

3    all of her claims. *Id.* Additionally, Plaintiff argues that additional considerations warrant approval

4    of the settlement and emphasizes the "ever-present risk of losing at trial or prevailing only on

5    some of the claims, which is a significant factor given the denial of class certification and the

6    summary judgment ruling in this case, also weighs in favor of approval." *Id.* at 15-16.

7        This Court is skeptical of deeply discounted PAGA settlements. It has rejected a proposed

8    resolution of PAGA claims for 0.1% of the maximum PAGA exposure. *O'Connor*, 201 F.Supp.3d

9    at 1135. Additionally, this PAGA Settlement is distinguishable from PAGA settlements that are

10   part of larger class action settlements as it is a stand-alone PAGA settlement; it is not the tail of a

11   larger settlement on the merits of wage claims. *See Ruch v. AM Retail Grp., Inc.,* 2016 WL

12   5462451, at \*2, \*7 (N.D. Cal. Sept. 28, 2016) (the court granted final approval of a $1,150,000

13   gross class settlement that allocated $10,000 to PAGA penalties); *Van Kempen v. Matheson Tri-*

14   *Gas, Inc.*, 2017 WL 3670787, at \*10 (N.D. Cal. Aug. 25, 2017) (the court granted final approval

15   where a $5,000 PAGA penalty was allocated from $370,000 gross class settlement fund).

16   However, given the risk of losing at trial and the low likelihood of success of the merits, as well as

17   the difficulties Plaintiff would face in trying the PAGA claims where the Court has already found

18   a lack of commonality and predominance in this case, the Court can reasonably conclude that the

19   purposes of PAGA are adequately advanced here, though barely so.

20   C.    Settlement is Neither Collusive or Unfair

21       Plaintiff states that there is no indication that the negotiated Settlement is the result of self-

22   interest. Memo at 12.

23       This Court has noted that when reviewing a class settlement for preliminary approval, "the

24   Court must be especially sensitive to the risk of collusion or a less than full adversarial process

25   where claims pending in other lawsuits are released for minimal value, in order to induce the

26   defendant to settle *this* case." *O'Connor*, 201 F. Supp. 3d at 1121.

27       The parties specifically claim that there is "no such risk" of PAGA being used as a

28   bargaining chip here since the Settlement is "based on the good faith assessment that Plaintiff had

United States District Court
Northern District of California

United States District Court
Northern District of California

1    little to no chance of success on the merits following the Court's denial of class certification of

2    Plaintiff's unpaid time, meal and rest break, and derivative claims, and the Court's subsequent

3    granting of Defendant's motion for summary judgment with respect to the certified wage class."

4    Joint Response at 1.

5         Here, there is no indication that any other cases are affected by this PAGA Settlement and

6    as noted above, the Settlement does not preclude Aggrieved Employees from bringing individual

7    claims or PAGA claims for future violations against Defendant.  Further, as discussed above, it

8    does not appear that the PAGA claims at issue were used as a bargaining chip since Plaintiff's

9    individual settlement with Defendant is not contingent upon approval of this PAGA Settlement.

10    *See* Settlement ¶ 23 (if the Court were not to approve the PAGA Settlement, the Settlement states

11    that "Plaintiff will dismiss the remaining PAGA claims without prejudice, for consideration as

12    provided in her individual agreement . . . .").

### VI.    CONCLUSION

14         In summary, the terms of the stipulated Settlement appear to serve the purposes of PAGA.

15    *See Viceral v. Mistras Group, Inc.,* 2016 WL 5907869, * 9 (N.D. Cal. Oct. 11, 2016) ("while the

16    Court is mindful of the need to safeguard the statutory purposes of PAGA and to ensure that the

17    parties do not use a PAGA claim as a mere bargaining chip, and while the Court would ordinarily

18    be highly skeptical of a settlement that amounts to a tiny fraction of the value of the PAGA claim,

19    under the unusual and peculiar circumstances of this case where Plaintiffs face a substantial risk of

20    recovering nothing on either the PAGA or class claims, the Court concludes that the settlement of

21    the PAGA claim is reasonable in the context of the settlement as a whole.")  Additionally, the

22    Settlement's adequacy is supported in part by the LWDA's failure to object.  *See, e.g.,*

23    *Chamberlain v. Baker Hughes, a GE Company, LLC*, 2020 WL 4350207, at *5 (E.D. Cal., July

24    29, 2020) ("Because of the concrete risk attendant with the pursuit of further litigation in this

25    action and, *most critically*, the lack of objection from the LWDA despite being provided timely

26    notice of the terms of this proposed settlement, the court finds that the amount offered in

27    settlement of the PAGA claims here weighs in favor of approval.") (emphasis added); *Echavez v.*

28    *Abercrombie & Fitch Co.*, 2017 WL 3669607, at *3 (C.D. Cal. Mar. 23, 2017) ("The Court infers

United States District Court
Northern District of California

1    LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the

2    proposed PAGA penalty amount.").

3        As such, the Court **APPROVES** the joint stipulated PAGA Settlement (Exhibit 1) and

4    **DISMISSES WITH PREJUDICE** Plaintiff's seventh cause of action for PAGA penalties and

5    her remaining individual claims against Defendant UPS.  The Court retains jurisdiction to oversee

6    administration and enforcement of the terms of the PAGA Settlement and the Court's orders.  The

7    Parties shall submit a declaration regarding the status of the uncashed settlement checks by April

8    4, 2022.  Funds represented by uncashed settlement checks shall be tendered to the Controller of

9    the State of California to be held pursuant to the Unclaimed Property Law for the benefit of those

10   Aggrieved Employees who did not cash their checks.

11

12       **IT IS SO ORDERED**.

13

14   Dated: December 22, 2021

15

16   _____

17   EDWARD M. CHEN
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28